MARRERO, DEMANDANTE Y APELADA, v. FORDHAM ET AL., DEMANDADAS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Ponce en pleito sobre filiación y reclamación de herencia.

No. 1833.—Resuelto en julio 21, 1919.

FILIACIÓN—RECONOCIMIENTO FORZOSO DE HIJO NATURAL—APRECIACIÓN DE PRUEBAS.—En un pleito sobre reconocimiento de hijo natural, cuando la corte inferior llega a la conclusión de que el demandante ha estado en la posesión continua del estado de hijo natural del supuesto padre, justificada por actos directos de éste con relación al demandante, no se irá en apelación contra dicha conclusión a menos que se demuestre pasión, prejuicio, parcialidad o manifiesto error en la apreciación de las pruebas.

ID.—EXTRATERRITORIALIDAD DE·SENTENCIAS DE DIVORCIO DICTADAS EN OTROS ESTADOS.—La prohibición de contraer nuevo matrimonio decretada por la corte en New York de acuerdo con un estatuto de aquel Estado, alegada por el demandado en un pleito sobre reconocimiento de hijo natural para establecer que el padre y la madre no hubieran podido contraer matrimonio al tiempo de la concepción y nacimiento del demandante no tiene efecto extraterritorial.

JURISDICCIÓN—JUEZ DE FACTO.—En el presente caso, en la fecha de la celebración del juicio había expirado el término por el cual fué nombrado el juez de

la corte pero había sido nombrado para un nuevo término por el Gobernador y no se demostró que en esa fecha el Senado hubiera dejado de aprobar tal nombramiento. Si el juez no actuó como un juez *de jure*, indiscutiblemente actuó como un juez *de facto*, pues él tuvo esa creencia y las partes estuvieron conformes con ella.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. O. B. Frazer*.

Abogado de la apelada: *Sr. José Tous Soto*.

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

Con fecha 29 de noviembre de 1915, Amelia Marrero, representada por su madre Rafaela Marrero, con patria potestad sobre ella, radicó demanda en la Corte de Distrito de Ponce contra María D. Fordham y Esther Bessie Boerman, viuda y madre respectivamente del difunto Charles M. Boerman y herederas testamentarias del mismo, para que se declare a la demandante hija natural reconocida de Charles M. Boerman, con derecho a llevar su apellido y a heredar la cuarta parte de los bienes del mismo, computándosele en su legítima, sin traba ni restricción alguna, un legado de $5,000 dejado por Boerman a la demandante, con costas, desembolsos y honorarios de abogado a las demandadas.

Alega la demandante como hechos determinantes de su acción que es hija natural reconocida de Rafaela Marrero, nacida en Ponce el 16 de septiembre de 1901, como fruto de las relaciones carnales extramatrimoniales habidas entre dicha Rafaela Marrero y Charles M. Boerman, siendo ambos solteros y sin impedimento alguno para contraer matrimonio; que Boerman falleció en 30 de enero de 1915, en Ponce, sin dejar descendientes legítimos, bajo testamento ológrafo declarado tal y mandado protocolar por sentencia de la Corte de Distrito de Ponce, en cuyo testamento Boerman instituyó por sus únicas y universales herederas a su consorte María D. Boerman, *nee* Fordham, residente en Ponce, y a su madre Esther Bessie Boerman, residente en Poneweish, Rusia, dejando un legado de $5,000 a la demandante Amelia Marrero,

que no se le entregaría hasta la edad de veinticinco años, percibiendo entretanto el interés del 6 por ciento anual; que la demandante estuvo constantemente desde su nacimiento hasta la muerte de Boerman en la posesión del estado de hija natural de éste, quien siempre sufragó los gastos del sustento, vestido, habitación, asistencia médica y educación de Amelia Marrero, se ocupó de su instrucción, matriculándola él personalmente en las escuelas públicas, presentándola y recomendándola a las profesoras como su hija y queriendo que se matriculara con el apellido Boerman; la trató pública y privadamente como hija, dándole el nombre de tal y consintiendo y queriendo que ella le diera a su vez el nombre y tratamiento de padre; la acarició, reprendió, hizo regalos y se interesó siempre por su bienestar, y en diversas ocasiones manifestó a distintas personas que era su hija y deseaba considerarla y tratarla como tal y del mismo modo fuera considerada y tratada por todos.

Fué anotada la rebeldía de la demandada Esther Bessie Boerman, y la otra demandada María D. Fordham, viuda de Boerman, contestó la demanda negando sus hechos fundamentales y alegando como materia nueva que Charles M. Boerman hacia el 15 de noviembre de 1893 contrajo matrimonio en la ciudad de Chicago, Illinois, con Sophia Boerman; que ésta en 9 de junio de 1900 obtuvo de la Corte Suprema del Estado de New York un decreto de divorcio contra su esposo Charles M. Boerman por causa de adulterio, en cuyo decretó "se ordena, adjudica y decreta que será legal para dicha Sophia Boerman, la demandante, casarse otra vez, del mismo modo que si el demandado Charles M. Boerman estuviera actualmente muerto, pero que no será legal para dicho Charles M. Boerman, el demandado, casarse otra vez hasta que dicha Sophia Boerman la demandante, esté actualmente muerta"; que Sophia Boerman vivió hasta el año 1905 y hasta esa fecha estuvo incapacitado Boerman para contraer matrimonio tanto de acuerdo con las leyes del Es-

tado de New York como con arreglo a las prescripciones del Código Civil Español que le eran aplicables; y que Boerman en su testamento ológrafo declaró expresamente estar casado con María D. Fordham y no tener hijos ni de ella ni de ninguna otra mujer.

Celebrado el juicio la Corte de Distrito de Ponce, estimando probadas las alegaciones esenciales de la demanda, y también la alegación de la demandada María D. Fordham, de haberse dictado sentencia de divorcio en el Estado de New York contra Charles M. Boerman, en la fecha y términos expresados en la contestación, dictó sentencia en 20 de diciembre de 1917, por la que declara que Amelia Marrero es hija natural reconocida de Charles M. Boerman, con derecho a llevar el apellido de éste y a percibir la parte de herencia que le corresponda de acuerdo con la ley, ordenando además que se computen en su legítima a Amelia Marrero los $5,000 del legado que le dejó en su testamento Charles M. Boerman, sin la limitación establecida por el testador.

Esa sentencia está sometida a nuestra consideración á virtud de recurso de apelación contra ella interpuesto por la representación de la parte demandada María D. Fordham, viuda de Boerman; y se alegan como motivos del recurso los siguientes: 1º. Insuficiencia de la prueba para establecer que el *status* de la demandante era el de hija natural del finado Charles M. Boerman; 2º. Error al estimar que Boerman tenía capacidad para procrear un hijo natural a la fecha de la concepción y nacimiento de la demandante; 3º. Falta de jurisdicción del juez sentenciador para ver y decidir el caso.

Hemos examinado la evidencia aportada al juicio por ambas partes y ella sostiene la sentencia apelada, pues ofrece prueba vigorosa y convincente para llegar a la conclusión de que la demandante Amelia Boerman ha estado en lo posesión continua del estado de hija natural de Charles M. Boerman, justificada por actos directos de dicho Boerman con

relación a la demandante, según exije el artículo 135 del Código Civil Español que la parte apelante invoca como aplicable al caso por ser el que regía en la fecha del nacimiento de dicha demandante. La misma parte demandada, la viuda de Charles M. Boerman, declara que la demandante llevaba el apellido de su padre con consentimiento y beneplácito de éste y que por esa razón hasta pensó en adoptarla, por más que desistiera luego de semejante idea. El propio Boerman aunque declaró en su testamento carecer de hijos, hizo un legado a la demandante de $5,000. La prueba aportada al juicio es robusta y clara como es necesario en pleitos de reconocimiento de hijos naturales. *Negreda* v. *Samohano*, 16 D. P. R. 692, y *Méndez* v. *Martínez*, 21 D. P. R. 252.

No se nos ha demostrado por la parte apelante que la corte inferior obrara con pasión, prejuicio, parcialidad o manifiesto error en la apreciación de dicha prueba.

Y Boerman estaba capacitado para casarse si hubiera querido con Rafaela Marrero, madre de la demandante, en las fechas de su concepción y nacimiento, no obstante el decreto de divorcio de la Corte Suprema de New York, de junio 9, 1900, expresivo de que no sería legal para él casarse otra vez hasta que su esposa Sophia Boerman hubiera fallecido. Aunque no aparece del récord la fecha precisa en que ocurrió el fallecimiento de Sophia Boerman, como la demandada alega que vivió hasta el año 1905, debemos presumir que aun vivía cuando fué concebida y nació la demandante, como también hemos de presumir que la Corte Suprema de New York en su decreto de divorcio de 9 de junio, 1900, prohibiendo a Boerman casarse otra vez hasta que hubiera fallecido su esposa, se ajustó al estatuto de dicho Estado, por más que no se nos haya demostrado cuál sea ese estatuto. Ni dicho estatuto ni la sentencia a que se ajustara impedían a Boerman casarse en Puerto Rico con Rafaela Marrero, no obstante vivir su esposa Sophia Boerman.

"Es una regla general que un estatuto que prescribe en términos

generales que el esposo que haya sido declarado culpable no contraerá matrimonio después del divorcio es aplicable solamente a los divorcios decretados dentro del estado.   *   *   *   La prohibición de contraer nuevo matrimonio generalmente se considera como un castigo y no tiene efecto extraterritorial."

9 R. C. L. 504.

La Corte Suprema de Louisiana, interpretando precisamente el estatuto de New York, se expresó en los términos siguientes en el caso de Sucesión Hernández, 24 L. R. A. (N. S.) 831:

"La prohibición del estatuto de New York en el sentido de que ningún segundo o subsiguiente matrimonio podrá ser contraído por ninguna persona durante la vida del primer esposo o esposa de dicha persona, en el caso de que el primer matrimonio sea anulado o disuelto por causa de adulterio, no tiene efecto extraterritorial por ser un estatuto penal; y no puede dársele el efecto de anular un contrato de matrimonio entre personas que se encuentren residiendo en el extranjero, no obstante haber sido celebrado en la ciudad y Estado de New York, manifestando las partes contratantes su intención de estar y residir luego en Louisiana y de residir realmente después allí."

La sentencia de la Corte Suprema de New York de 9 de junio de 1900 y el estatuto prohibitorio del mismo Estado no producía efectos en Puerto Rico.

Pero se alega que el estatuto de Puerto Rico impedía a Boerman contraer matrimonio y para ello invoca la parte apelante que la ley aplicable al caso es el Código Civil Español, por haber ocurrido la concepción y nacimiento de la demandante antes de que comenzara a regir en 1902 el Código Civil reformado.

Los preceptos del Código Civil Español fueron modificados sustancialmente en materia de matrimonio y divorcio por la Orden General de 17 de marzo de 1899, y esa orden en su artículo 3°., No. 1°., permite el matrimonio a los casados cuyos vínculos hubieren sido disueltos, y aunque en su número 12 prohibe el matrimonio a los adúlteros que hubiesen

sido condenados como tales por las cortes, tal prohibición no afectaba a Boerman quien ni fué condenado por delito de adulterio en causa criminal ni había cometido adulterio con Rafaela Marrero, o sea la madre de Amelia Marrero. Al adúltero no se le prohibía en absoluto contraer nuevo matrimonio sino contraerlo con su cómplice.

Acerca de la falta de jurisdicción del juez de Ponce para ver y decidir el presente caso, aparece de la transcripción de autos lo siguiente:

"Antes de principiarse la vista del caso, el Hon. Juez de la corte llama la atención de las partes sobre una cuestión que estima importante, cual es la siguiente: El término de cuatro años del juez de esta corte venció el día 1°. de noviembre de 1917, o sea ayer; aunque he sido nombrado por el Gobernador—dice el juez—para el puesto de Juez de la Corte de Distrito de Ponce, el nombramiento fué enviado al Senado y hasta ahora el juez no tiene conocimiento de que se haya resuelto definitivamente su nombramiento en el Senado. El juez cree, después de haber estudiado la cuestión hasta donde se lo ha permitido el tiempo, que puede continuar como juez *de facto* hasta tanto sea nombrado su sucesor; pero somete el caso a los abogados de las partes para que puedan informar a la corte su opinión respecto al particular. Los abogados pueden o no hacer objeción a que el juez actúe. Los abogados Tous Soto y Flores Colón manifiestan a la corte que no hacen objeción alguna; los Sres. Horton y Arroyo, abogados de la demandada, también avisan que no tienen objeción que hacer. El juez hace constar que cree, después de un estudio que ha hecho de la ley y la jurisprudencia, que puede seguir conociendo de los casos ante esta corte y asumiendo las funciones de juez, como un juez *de facto*, y quizás como un juez *de jure*, pero positivamente como un juez *de facto*, hasta tanto sea nombrado su sucesor. El abogado Sr. Horton solicita unos minutos para consultar con su cliente, ya que se trata de una cuestión importante. Pocos instantes después vuelve a la sala y manifiesta a la corte que su cliente no se opone. El juez entonces resuelve que puede continuar ejerciendo sus funciones como tal juez de acuerdo con la teoría expuesta en el caso de *El Pueblo ex rel. Wm. C. Stratton* v. *George Oulton, Controller,* reportado en 28 Cal. 44, y ordena que se entre en la vista del caso."

La falta de jurisdicción alegada carece de base que la

sostenga pues no hay constancia de que en la ·fecha de la celebración del juicio hubiera sido aprobado o no por el Senado el nombramiento del Hon. Domingo Sepúlveda para la Corte de Distrito de Ponce por el Gobernador de Puerto Rico. Pero de todos modos entendemos que dicho juez tenía, para conocer del caso la jurisdicción que tan tardíamente le niega la parte apelante, pues si el Juez Sepúlveda no actuó como un juez *de jure* indiscutiblemente actuó como un juez *de facto.* El tuvo esa creencia y las partes estuvieron conformes con ella. 22 R. C. L. 588.

Es de confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro, Aldrey y Hutchison.