Mrs. Charles M. Boerman, née María L. Fordham, peticionaria, apelada y apelante, *v.* Herederos de Esther Bessie Boerman, opositores, apelantes y apelados.

Núm. 7060.—*Sometido:* Marzo 2, 1937. *Resuelto:* Febrero 4, 1938.

*Mariano Acosta Velarde y Federico Acosta Velarde,* abogados de los apelantes y apelados; *E. Ramos Antonini y V. Gutiérrez Franqui,* abogados de la apelada y apelante.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

El presente es un recurso de apelación entablado en un incidente surgido en la administración judicial de los bienes dejados por el finado Charles M. Boerman. La señora de Charles M. Boerman, née María L. Fordham, fué designada originalmente administradora judicial de los bienes de su finado esposo en 1917. Por testamento se declaró que los partícipes en el grueso de la herencia lo eran la viuda y la madre del testador por partes iguales. El testamento también contenía un legado en favor de Amelia Marrero, quien posteriormente probó ser hija natural del testador y recibió su participación legal en la herencia. Véanse: *Marrero v. Fordham et al.,* 27 D.P.R. 708; 273 Fed. 61; *Boerman v. Marrero,* 34 D.P.R. 126; 27 Fed. (2d) 321. Como resultado de estos diversos litigios la herencia ya había sido distribuída para 1922, tanto en lo que se refería a la señora de Charles M. Boerman como a Amelia Boerman Marrero. La participación restante, o sea, la de doña Esther Bessie Boerman, madre del finado, no pudo ser entregada a ésta debido a hallarse ella fuera de la isla, siendo Rusia su residencia para aquel entonces. La participación exacta de la herencia recibida por cada heredera puede ser determinada leyéndose nuestra opinión en el caso de *Boerman v. Marrero,* supra. Ésta constituye más o menos la historia de la administración judicial hasta el año 1922.

La administradora judicial quedó en posesión de la participación de su suegra en la herencia. No se desprende claramente si su nombramiento original continuó en vigor, más de las varias opiniones emitidas por este tribunal en relación

con distintos aspectos del caso, se colige que sus deberes activos como administradora finalizaron para aquel entonces y que ella continuó bien *de jure* o *de facto*—ciertamente *de facto*—en posesión de la parte correspondiente a Esther Bessie Boerman con el objeto de entregar tal posesión a ésta o a sus herederos debidamente autorizados. Esther Bessie Boerman falleció bajo testamento en Rusia, y sus herederos, luego de una tentativa infructuosa de obtener posesión de su participación en la herencia, finalmente probaron su identidad y derecho a los bienes allá para el 1930 y lograron tomar posesión de ellos, así como una resolución de la Corte de Distrito de Ponce requiriendo a María L. Fordham (señora Boerman) para que rindiera su cuenta final. Es precisamente en relación con esta cuenta final y algunas de sus partidas que se ha interpuesto el presente recurso de apelación.

Los apelantes en este caso específico son, por un lado, los herederos de Esther Bessie Boerman, y por otro, la señora de Charles M. Boerman. Ambas partes impugnan algunas de las conclusiones de la corte sentenciadora en lo relativo a la cuenta final arriba mencionada.

Los herederos también han presentado una moción para que se desestime el recurso de apelación interpuesto por la señora de Charles M. Boerman fundados en que el escrito de apelación fué radicado en la corte inferior más de diez días después de haber comenzado el término legal para apelar. Los herederos sostienen que la resolución que aprobó la cuenta final es una providencia especial dictada después de sentencia y que por tanto la apelación debió haberse entablado dentro de diez días, de conformidad con el inciso tercero del artículo 295 del Código de Enjuiciamiento Civil (ed. 1933). Resolveremos primero esta moción para desestimar.

Los promoventes de la moción para desestimar sostienen que la sentencia o decreto final en el procedimiento de administración judicial fué dictado cuando la corte de distrito, con fecha 24 de septiembre de 1930, resolvió que tal adminis-

tración había tocado a su fin, y que cuando aprobó la cuenta final meramente dictaba una providencia especial después de sentencia. No se citan casos en apoyo de esta proposición.

Los artículos 588, 589 y 590 del Código de Enjuiciamiento Civil (ed. 1933) disponen:

"Artículo 588.—Cuando el albacea o administrador haya terminado la liquidación de los bienes, renuncie o sea separado, o por cualquier otra causa cese en el desempeño de su cargo, deberá presentar a la corte una cuenta final jurada, y acompañada de los recibos y resguardos correspondientes, la cual también se pondrá de manifiesto para su inspección. Al presentarse dicha cuenta final, se citará a todas las partes interesadas en el caudal, a fin de que puedan presenciar la liquidación final de sus cuentas, y se les devuelva o cancele la fianza que hubieren prestado.

"Artículo 589.—Si pasados ocho días después de presentada la citación decretada por un juez de dicha corte, ninguna de las partes hubiese hecho oposición a las cuentas, la corte de distrito si en su opinión dichas cuentas son justas y correctas, dictará auto aprobándolas y declarando exento de responsabilidad al administrador; y cancelará la fianza que hubiere constituído. Si las cuentas fueren impugnadas, se sustanciará la impugnación y se admitirán pruebas en una vista del caso y se aprobarán o desaprobarán aquéllas según el resultado de la vista.

"Artículo 590.—La corte de distrito dictará auto definitivo, bien aprobando la cuenta presentada, o haciendo en ella modificaciones y alteraciones, con cargo al albacea o administrador, que el derecho y la justicia reclamen; contra dicho auto podrá interponerse recurso de apelación."

De un examen de estos tres artículos se desprende que la radicación y aprobación de la cuenta final prácticamente constituye de por sí un procedimiento especial. La ley ha dispuesto que se citen todas las partes interesadas y que de ser necesario se celebre una amplia vista, y ha autorizado una apelación de lo que el estatuto mismo califica de "auto definitivo, bien aprobando la cuenta presentada, o haciendo en ella modificaciones y alteraciones, con cargo al albacea o administrador, que el derecho y la justicia reclamen; . . . " La resolución que termina la administración judicial pone fin

a las actividades del administrador, mas es la resolución aprobatoria de la cuenta final la que definitivamente releva al administrador o administradora de su responsabilidad oficial.

El único caso que hemos podido hallar en nuestra jurisprudencia y que puede tener alguna relación con la materia es el de *Díaz et al.* v. *Cividanes,* 25 D.P.R.́ 450. En ese caso el administrador provisional, Genaro Cautiño, había renunciado como tal y rendido una cuenta final con súplica de que la misma fuera aprobada. En diciembre 27, 1915, el juez de distrito dictó resolución aprobando tal cuenta y sugiriendo una compensación adicional. Luego, con fecha 31 de enero de 1916, el mismo juez dictó otra orden final relevando a Cautiño de toda responsabilidad en la administración. Casi un año más tarde una parte interesada solicitó se dejara sin efecto la orden aprobatoria, supra, y que se le diera la oportunidad de atacar la cuenta. La corte declaró con lugar la moción, pero insistió en que se citara a Cautiño y se le diera la oportunidad de defenderse, y exigió otras actividades de menor importancia de la parte opositora. Esta última apeló de tal resolución condicional. En el curso de su opinión este tribunal dijo (bastardillas nuestras):

"Admitiendo que cualquiera, o ambas de las resoluciones de fecha diciembre 27, 1915, y enero 31, 1916, fueran definitivas, *como parece fué la intención y modo de entenderlas de la corte de distrito,* indudablemente que una resolución dictada un año después para considerar nuevamente cuestiones que al parecer ya habían sido resueltas por dichas anteriores órdenes no puede considerarse de modo alguno como una sentencia definitiva, . . ."

Por tanto, somos del criterio de que la resolución apelada era un decreto final dictado en un procedimiento especial y, por ende, que la apelación fué entablada oportunamente.

■ Consideremos ahora la apelación de la señora de Charles M. Boerman, née María L. Fordham. Tanto debido al alegato insuficiente · como con motivo de la opinión de este tribunal, dictada en respuesta a una moción para deses-

timar, de 8 de mayo de 1933, la apelante está limitada a la consideración de uno de los tres errores señalados por ella. El señalamiento lee:

"La Corte de Distrito cometió manifiesto error al declarar con lugar en parte la impugnación de los opositores cargando en consecuencia la suma de $1,260 a la Administradora en concepto de arrendamiento por la casa de Magueyes."

La casa en cuestión forma parte de un pequeño huerto que fué adjudicado a doña Esther Bessie Boerman al hacerse la partición de la herencia, y del cual María L. Fordham continuó en posesión desde 1922 a 1930. Tócanos determinar si a la administradora debe cargársele un canon de arrendamiento razonable por su ocupación de la casa durante este tiempo. Cuando se hizo la partición o división de la herencia, la propiedad denominada "Magueyes" fué tasada en la suma de $21,000. Se estableció una comunidad en los siguientes términos:

| | |
|---|---|
| Esther Bessie Boerman | $19,667.845 |
| Amelia Boerman Marrero | 802.925 |
| María L. Fordham | 529.23 |
| Total | $21,000.00 |

En otras palabras, los herederos de Esther Bessie Boerman poseen el 93.6364 por ciento del total. Su reclamación, desde luego, debe limitarse a su parte proporcional.

La apelante sostiene que su ocupación de la casa se debió principalmente para facilitar la administración de la hacienda y, por tanto, que tal ocupación redundó exclusivamente en beneficio de los herederos de Esther Bessie Boerman. Igualmente insiste en que ella nunca celebró contrato de arrendamiento alguno y en su consecuencia que no puede cobrársele ningún canon. Mas los apelados no se basan en un contrato de arrendamiento, sino en el deber que tiene una administradora de hacer cuanto sea razonable para que los bienes por ella administrados sean productivos a sus beneficiarios.

La duda que en verdad hemos abrigado es si a una administradora que está en posesión de determinados bienes con el solo objeto de entregar su posesión a los verdaderos dueños, debe imponérsele el deber positivo de hacer que tales bienes produzcan algo. No podemos perder de vista el hecho de que la señora Boerman vino a Puerto Rico con el objeto de administrar los bienes dejados por su finado esposo. Ella no era una mera extraña a la administración, sino la viuda del testador. De ser posible debe ejercitarse mayor consideración y lenidad en lo que a sus actuaciones como tal administradora se refiere, debido al hecho de que ella quizá pudo creer que tenía derecho a hacer determinadas cosas y a gozar de determinados privilegios, cosa que un administrador extraño a los bienes posiblemente no podía razonablemente haberse imaginado. La viuda era también una copartícipe y, aunque pequeño, tenía cierto interés en el dominio de los bienes. En adición a todo esto, del testimonio incontrovertido que de ella figura en los autos se desprende que la casa no tenía agua y que por espacio de siete meses con posterioridad a 1915 trató infructuosamente de alquilarla. También parece razonable imaginar que de no haber vivido ella la casa y cuidado de los terrenos circundantes, se hubiera necesitado un mayordomo a un costo mayor para los herederos de Bessie Boerman.

Por último, aunque no de menos importancia, debe hacerse constar, según alegaban los herederos mismos en su oposición a otras partidas de esa cuenta final, que desde 1920 en adelante ella no tenía ningunos deberes activos de administración, sino meramente la obligación de entregar la propiedad a Esther Bessie Boerman o a los herederos de ésta cuando quiera que se presentaran a solicitar la posesión a que tenían derecho.

Bajo todas estas circunstancias, creemos que los fines de la justicia quedan cumplidos de manera más equitativa exonerando a María L. Fordham de todo cargo por su ocupación de la casa en la propiedad "Magueyes" mientras ella tuvo la

custodia de la misma con el fin de entregarla a los herederos de Esther Bessie Boerman. La decisión de la corte inferior a este respecto debe, en su consecuencia, ser revocada.

■ Consideremos ahora la apelación de los herederos de Esther Bessie Boerman.

El primero de los siete errores señalados se refiere a haber concedido la corte inferior la suma de $4,954.265 como participación de los apelantes en los honorarios de abogado y en las costas judiciales incurridas por la administradora, según su cuenta, durante los años 1923 a 1930. Los apelantes llaman nuestra atención a un error aritmético en la suma total de estos honorarios de abogado.

Toda vez que nos proponemos analizar la prueba relativa al importe de estos honorarios y costas judiciales, ignoraremos este supuesto error por el momento.

El legajo de sentencia contiene una cuenta final jurada por la señora de Charles M. Boerman, relativa a los ingresos y gastos de la sucesión de Charles M. Boerman para los años 1923 a 1930, ambos inclusives. Bajo el epígrafe de "honorarios de abogado y costas judiciales," aparecen las siguientes cifras:

| | |
|---|---|
| 1923 | $3, 393. 10 |
| 1924 | 528. 82 |
| 1925 | 1, 142. 85 |
| 1926 | 1, 228. 74 |
| 1927 | 1, 674. 27 |
| 1928 | 649. 70 |
| 1929 | 222. 50 |
| 1930 | 200. 00 |
| | $9, 802. 05 |

En las páginas que siguen a esta cuenta final aparece un resumen de los gastos e ingresos de las distintas propiedades adjudicadas a Esther Bessie Boerman (que son los bienes envueltos en este caso), donde, bajo el mismo epígrafe de la cuenta general, aparecen las siguientes cifras:

| | Recibos: | Gastos: |
|---|---|---|
| 1923–30 | | $4, 954. 26½ |

La transcripción de la evidencia contiene la declaración de la administradora con respecto a estos gastos. Lo menos que podría decirse sobre su declaración es que no es clara ni contiene cita de cantidades específicas ni una explicación clara de la naturaleza de los litigios específicos tenidos por la administración desde 1922 a 1930. Nos ha sido imposible determinar con certeza cómo gastó ella los $4,954.26 cargados a los herederos como participación de éstos en los honorarios de abogado y costas judiciales. En muchos casos tendremos que aceptar los gastos en la forma indicada por las órdenes de la corte o por los recibos de los funcionarios judiciales, etc., como correctos, descansando según debemos, hasta cierto punto, en el mayor grado de familiaridad y conocimiento tenido por la corte sentenciadora sobre toda esta administración.

La resolución de la corte inferior concediendo la suma anterior no arroja luz alguna sobre la situación, toda vez que la corte, luego de haber negado en su totalidad la partida en cuestión, dijo en reconsideración:

"La corte reconsidera el apartado 6°. de la referida resolución, quedando como queda redactado, en la siguiente forma:

"Declara sin lugar la impugnación hecha por los opositores al cargo que hace la Administradora de $4,954.26½ pagados por honorarios de abogado; por entender la corte, de acuerdo con lo expuesto por el Tribunal Supremo de Puerto Rico en el caso *Ex Parte Boerman*, 38 D.P.R. páginas 757 y 758, que 'hasta el momento de entregar los bienes a los herederos, la retención de los mismos por parte de la administradora, *es una continuación de sus deberes como administradora de la herencia de Charles M. Boerman*' y ella tenía derecho a utilizar los servicios de abogado para defender los bienes hasta que fueran entregados a los herederos."

Nos inclinamos a convenir con la corte inferior en que la señora de Charles M. Boerman tenía autoridad para contratar los servicios de un letrado en cualquier tiempo entre 1922 y 1930, y cargar los honorarios y costas correspondientes a los herederos de la señora Esther Bessie Boerman, pero solamente si dichos servicios eran necesarios para proteger

su participación en la herencia o estaban relacionados en alguna otra forma con la preservación de tal participación.

A fin de resolver esta cuestión, debemos, según hemos dicho, analizar la declaración de la señora Boerman y los recibos y órdenes judiciales que figuran en la transcripción de la evidencia.

Conforme indican los apelantes, la señora Boerman sólo se refiere a tres casos distintos en su declaración en lo que a honorarios de abogado se refiere. Uno es el que ella denomina "el caso contra la propiedad de Río Piedras." De cuanto está ante este tribunal hemos inferido que la propiedad de Río Piedras fué adjudicada a la testadora de los apelantes al efectuarse la partición de los bienes de Charles M. Boerman. El pleito parece haber sido para recobrar ciertas rentas derivadas de los mismos. Ella admite que este pleito fué iniciado en 1922, mas no dice si tuvo o no éxito en el mismo. Aunque la prueba no es muy clara, estamos inclinados a darle el beneficio de la duda con referencia a este caso específico, toda vez que el mismo afectó claramente los frutos de una de las propiedades asignadas a los apelantes. El hecho de que este pleito pudiera haber sido instruído en 1922 y, en su consecuencia, antes del período que está bajo nuestra consideración, no es determinante, toda vez que el desembolso material de los honorarios probablemente se efectuó algún tiempo después de 1922.

Otro de los pleitos fué uno en que la administradora atacó, ante la Corte Federal, la sentencia de la Corte de Distrito de Ponce, confirmada posteriormente por este Tribunal, en el pleito de filiación iniciado con éxito por Amelia Marrero. El costo de este litigio, a nuestro juicio, no debe ser pagado, siquiera en parte, por los apelantes, que nunca impugnaron la certeza del procedimiento de filiación. Además, este pleito no afectaba en absoluto los bienes que ya se hallaban en poder de la administradora para ser entregados a los apelantes.

El tercer recurso era una petición iniciada por una persona de apellido Calderón, solicitando la partición de una co-

munidad. Nos inclinamos a favorecer la participación de la administradora en dicho pleito, toda vez que el mismo también envolvía ciertos bienes en que los aquí apelantes tenían interés.

Las órdenes judiciales autorizando el pago de honorarios a varios letrados, llegan a cinco. Por la primera, a F. Manuel Toro, que fué designado árbitro allá para 1920, con el propósito de examinar, fiscalizar e informar sobre una cuenta final rendida para aquel entonces por la actual administradora a instancia de Amelia Boerman Marrero, se le concedió la suma de $900 a cuenta de sus honorarios como tal árbitro. Esta orden está fechada el 29 de diciembre de 1922. En mayo 29, 1923, otra orden autorizó el desembolso de $1,100 al Sr. Toro en saldo de sus servicios a la administración, $1,025 a Peter J. Hamilton por servicios prestados a la administración, y $250 a Herminia Tormes por servicios profesionales desde enero primero 1923 a mayo 31, 1923. Estas dos órdenes justifican un desembolso de $3,275.

Las tres órdenes siguientes, fechadas abril 17, 1925, julio 30, 1927 y septiembre 12, 1929, autorizan el pago de honorarios a la firma profesional de Martínez Nadal, Tormes y Colón, hasta la suma de $1,150, y al Lic. Leopoldo Tormes por las sumas de $1,350 y $790, o sea un total de $3,290. Según la partición y distribución de 1920, a la Sra. Esther Bessie Boerman se le adjudicó la mitad de los bienes dejados por su hijo. Por tanto, somos de opinión que ella debe responder de la mitad de los honorarios pagados a los abogados o a otras personas a nombre de la sucesión, aún si los servicios fueron prestados antes de 1922. Por tanto, bajo estas circunstancias, debe cargarse a los apelantes la mitad de los gastos mencionados en los párrafos anteriores, ascendente a $3,282.50.

El resto de la prueba documental se compone de copias de varios recibos, cuentas y otros comprobantes que se unieron a las cuentas trimestrales rendidas por la administradora. La suma de éstos asciende a $2,873.25. De este total deben deducirse aproximadamente $250 que claramente apa-

recen haberse desembolsado en el caso de *Winnie L. Boerman v. Amparo Marrero et al.,* caso en equidad núm. 1227E, ante la Corte Federal, y cuyo desembolso ya hemos resuelto no debe ser sufragado en parte alguna por los apelantes. Esto dejaría un remanente de $2,623.25, suma de la cual los apelantes deben responder de $1,311.63. No vamos a tratar de investigar estos comprobantes individuales sino que aceptaremos las conclusiones de la corte inferior.

Del estudio que hemos hecho de la prueba creemos que a los apelantes debe cargárseles, por concepto de su participación en los honorarios de abogado y en las costas judiciales no más de la suma total de las cifras anteriores de $3,282.50 y $1,311.63, o sea $4,594.13. Por tanto, las conclusiones de la corte inferior deben ser modificadas y reducida la cantidad de $4,954.26 a $4,594.13.

██ El siguiente error señalado por los apelantes se refiere a los gastos incurridos en la reparación de una casa en la calle de San Francisco, en San Juan. Aunque los apelantes son copartícipes del dominio, el usufructo corresponde a la apelada. Los artículos 425, 428, 429 y 430 de nuestro Código Civil (ed. 1930) proveen:

"Artículo 425.—El usufructuario deberá cuidar las cosas dadas en usufructo como un buen padre de familia.

". . . . . . . . . .

"Artículo 428.—El usufructuario estará obligado a hacer las reparaciones ordinarias que necesiten las cosas dadas en usufructo.

"Se considerarán ordinarias las que exijan los deterioros o desperfectos que procedan del uso natural de las cosas, y sean indispensables para su conservación. Si no las hiciere después de requerido por el propietario, podrá éste hacerlas por sí mismo a costa del usufructuario.

"Artículo 429.—Las reparaciones extraordinarias serán de cuenta del propietario.

"El usufructuario está obligado a darle aviso cuando fuere urgente la necesidad de hacerlas.

Artículo 430.—Si el propietario hiciere las reparaciones extraordinarias, tendrá derecho a exigir al usufructuario el interés legal de la cantidad invertida en ellas mientras dure el usufructo.

"Si no las hiciere cuando fuesen indispensables para la subsistencia de la cosa, podrá hacerlas el usufructuario, pero tendrá derecho a exigir del propietario al concluir el usufructo, el aumento del valor que tuviese la finca por efecto de las mismas obras.

"Si el propietario se negare a satisfacer su importe, tendrá el usufructuario el derecho a retener la cosa hasta reintegrarse con sus productos."

La controversia gira sobre la naturaleza de las reparaciones, si fueron extraordinarias u ordinarias. Nos inclinamos a aceptar la conclusión de la corte sentenciadora al efecto de que las reparaciones surgieron con motivo del ciclón que azotó esta Isla en 1928. Los apelantes sostienen que la corte de distrito descansó más en la naturaleza extraordinaria de la causa (el ciclón) que en la naturaleza extraordinaria de las reparaciones mismas. De la lectura de los artículos citados uno saca la impresión de que la distinción gira en torno a si las reparaciones son "las que exigen los deterioros o desperfectos que procedan del uso natural de las cosas." Creemos que las reparaciones que se hacen necesarias debido a un huracán no caen razonablemente dentro de la anterior definición y deben, por ende, ser consideradas como extraordinarias.

Los apelantes sostienen que, de conformidad con el artículo 430, supra, la usufructuaria debe pagar intereses al tipo legal sobre la cantidad cargada a los dueños por concepto de reparaciones. En este caso sólo tenemos que ver con la rendición de la cuenta final de la Sra. Boerman como administradora y no trataremos de determinar los derechos de las partes respectivas a virtud de otras relaciones legales que puedan tener. El derecho de la apelada a cargar el gasto en cuestión a los apelantes era claro.

■■ El tercer señalamiento se refiere a la cuestión de seguro sobre la referida casa. Según nuestro Código Civil ni al dueño ni al usufructuario de un edificio se les impone el deber de asegurarlo. Podría suceder que en un caso excepcional recayera sobre el usufructuario el deber de asegurar

a tenor del artículo 425 del Código Civil (ed. 1930) como requisito necesario en el cuido de las cosas dadas en usufructo, como un buen padre de familia. No se desprende que éste sea tal caso excepcional.

Nos confrontamos una vez más con la doble personalidad disfrutada por la apelada, puesto que ella era tanto usufructuaria como representante de la dueña de los bienes. Su interés en lo que al asunto en litigio se refería era uno que estaba en conflicto. Si ella optaba por dividir los gastos del seguro con la dueña, ello no embargante podría, de conformidad con el artículo 446 (Código Civil, ed. 1930) gozar del nuevo edificio o percibir los intereses del precio del seguro, si se destruyera la casa. Por otra parte, ella hubiese estado en el deber de reconstruir aun si hubiera pagado la prima del seguro de su propio peculio. Bajo las circunstancias creemos que a ella le incumbía averiguar del dueño o dueños del edificio si deseaban asegurar la propiedad en unión de ella. Sin embargo, era por demás difícil comunicarse con la Sra. Esther Bessie Boerman, que se hallaba en Rusia, y las obligaciones de la apelada, de conformidad con su posición judicial como administradora, probablemente exigían que ella asegurara el edificio para proteger a su principal. De igual modo dudamos que la Sra. de Charles M. Boerman no pudiera estar protegida de acuerdo con los artículos 1789 *et seq.* del Código Civil (ed. 1911) en lo que respecta a la gestión de negocios ajenos. No sin dejar de abrigar alguna duda, nos inclinamos a aceptar la conclusión de la corte inferior al efecto de que los gastos de seguro deben ser distribuídos igualmente entre las partes.

■ Por el cuarto error los apelantes atacan las conclusiones de la corte inferior en lo relativo a las rentas producidas por cierta propiedad situada en la calle de Bayola, en Santurce. La corte de distrito resolvió que no se había probado que la apelada hubiera recibido las rentas. De los autos se desprende que a la apelada se le privó del derecho a disfrutar de estas rentas por resolución de la Corte de Distrito

de Ponce fechada allá para 1922. No estamos en condiciones de imputar negligencia a la administradora por haber obedecido tal orden, y si los apelantes tienen derecho a las rentas, ellos deben demandar a la persona que las ha disfrutado ilegalmente.

El siguiente señalamiento de error se refiere a haberse dejado de incluir en la cuenta final ciertas rentas, que se alega fueron recibidas o cobradas por la administradora. Quedamos convencidos por la propia declaración de ella y por el alegato de la apelada de que estas rentas nunca fueron recibidas por ella para beneficio de los aquí apelantes y que no se trataba de rentas acumuladas entre los años 1923 a 1930.

El sexto señalamiento de error se refiere a la suficiencia de la renta concedida por la corte inferior sobre la propiedad ocupada por la administradora en Magueyes. Este punto ha sido cubierto por la discusión que hemos hecho del recurso de apelación de la Sra. Boerman y, por tanto, no requiere ulterior discusión.

Por el último señalamiento de error se sostiene que la corte de distrito debió haber concedido intereses al tipo legal sobre el saldo que, para beneficio de los apelantes, se dejó en poder de la Sra. Boerman como resultado de la rendición de cuentas en 1922. La cuantía envuelta es de $2,533.84. Los apelantes reclaman intereses por espacio de ocho años tres meses, o sea $1,406.28. No estamos convencidos de que bajo las circunstancias de este caso deban cargarse tales intereses a la apelada. El estado de los autos demuestra que ella gastó más dinero del que realmente recibió por concepto de los bienes bajo su administración, y nos inclinamos al criterio de que ella, o usó la suma anterior para gastos, o tenía el derecho de hacerlo así. Sea ello como fuere, confirmaremos las conclusiones de la corte inferior.

Por las razones que anteceden, *debe revocarse la resolución \de la Corte de Distrito de Ponce, de fecha 2 de junio de 1932, según fué enmendada en 28 de diciembre de 1933, en tanto en cuanto carga a la administradora la suma de $1,260*

*por su ocupación de la casa en la finca Magueyes, y modificarse en tanto en cuanto concede la suma de $4,954.26 con cargo a los herederos de Esther Bessie Boerman como participación de éstos en los honorarios de abogado, suma que debe ser reducida a $4,594.13.*

Los Jueces Presidente Señor del Toro y Asociado Señor Córdova Dávila no intervinieron.