**CAFETEROS DE PUERTO RICO,**
Plaintiff, Appellant,

v.

**SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant,**
Appellee.

No. 5897.

United States Court of Appeals First Circuit.

Heard Feb. 8, 1962.

Decided July 10, 1962.

Hector Gonzalez Blanes, San Juan, P. R., for appellant.

Juan A. Faria, Asst. Sol. Gen., with whom J. B. Fernandez-Badillo, Sol. Gen., was on brief, for appellee.

Before WOODBURY, Chief Judge, and ALDRICH and GANEY *, Circuit Judges.

GANEY, Circuit Judge.

Appellant is a cooperative association of coffee growers in Puerto Rico. Among other functions, it received the coffee as a depository thereof from the member growers and sold it in the market for their account and returned the proceeds, less expenses and taxes, to them. Under an agreement with the Treasurer of the Commonwealth of Puerto Rico, appellant acted as a withholding agent in the collection of a special tax on each pound of raw coffee sold by it in Puerto Rico on behalf of its members. Prior to August 9, 1959, the effective date of Act No. 145 of May 11, 1939,[1] a tax of one-quarter of a cent was levied on the first sale of each pound of raw coffee in Puerto Rico beginning with the 1936–1937 crop, and the purchaser was obliged to pay the tax.[2] In addition, the price for the first sale of raw coffee in Puerto Rico was fixed by the Commissioner of Agriculture at 20 cents a pound.[3] For the 1939–1940 period, the

---

* By special designation.

1. Laws of Puerto Rico, 1939, p. 701. Section 3 of this Act in part provided: "The Treasurer of Puerto Rico is hereby authorized and directed to levy and collect, from and after the 1939–40 crop, and in succeeding years, a special tax of one and one-half (1½) cents on each pound of raw coffee sold for consumption in Puerto Rico; * * * Provided, That the minimum price which the Commissioner of Agriculture and Commerce shall fix pursuant to the provisions of Act No. 2554 of 1938, shall be increased by the amount of the tax hereinabove levied; and provided, further, that

the purchaser shall be subject to the payment of such tax to the Treasurer of Puerto Rico in the manner prescribed by the Treasurer in the regulations he shall promulgate for the purpose * * *."

2. See § 3 of Act No. 116 of May 15, 1936, Laws of Puerto Rico, p. 678.

3. Act No. 255 of May 15, 1938, authorized the Commissioner of Agriculture to fix the price of the raw coffee received by the producer within a minimum of 18 cents and a maximum of 22 cents a pound. This Act was amended by Act No. 124 of May 6, 1939, which provided, in part, "that the Commissioner of Agriculture and Commerce shall be em-

Commissioner of Agriculture and Commerce set the price which the producer shall receive for raw coffee at 18½ cents per pound. Immediately after August 9, 1939, the appellant had in its possession 2,898,082 pounds of raw coffee from the 1937–1938 crop.

Because of the uncertainty as to the meaning of the phrase "from and after the 1939–40 crop" in § 3 of Act No. 145 of May 11, 1939, the Treasurer of Puerto Rico sent a circular (No. 15), dated August 21, 1939, to the internal revenue agents and collectors. This circular states as follows:

"Some doubt has arisen as to the collection of the 1½ cents tax on each pound of raw coffee sold for consumption in Puerto Rico, as provided by Section 3 of Act No. 145, approved on May 11, 1939, which it is fitting to explain.

"Although said Act went into effect immediately after its approval, its effects as to the tax are only applicable to the coffee of the 1939 crop and succeeding years.

"The coffee of the 1938 crop and preceding years is covered by the provisions of Act No. 116 of May 15, 1936, and, therefore, subject to the tax of ¼ cents per pound of coffee provided by said Act.

"Consequently, every grower who has in stock coffee of the 1938 crop and preceding years should file with the Treasurer of Puerto Rico a sworn statement, in duplicate, before a notary public, or internal revenue agent or collector, in which he shall state the amount of coffee in his possession, its condition and the crop to which it belongs; and all coffee not declared shall be considered as of the 1939 crop and subject to the tax of 1½ cents per pound for consumption as provided by Act No. 145.

"In brief: The coffee declared as belonging to the 1938 crop and preceding years sold for consumption in Puerto Rico shall pay a tax of ¼ (one-fourth) cent on each pound, while the coffee of the 1939 crop and succeeding years shall pay the new tax of 1½ cents per pound."

The Department of Agriculture, by a notice appearing in the newspaper, "El Dia," on July 24, 1939, also requested each grower of coffee to declare in a sworn statement the amount of coffee in his possession, and that any coffee not so reported on or before August 9, 1939, would be considered as of the 1939 crop and subject to the tax of 1½ cents a pound.

Prior to marketing the 2,898,082 pounds of coffee, appellant, in two installments—one on November 17, 1939, and the other on February 27, 1940—paid the tax on the coffee at the rate of one-quarter of a cent per pound or $7,245.21.[4] When Act No. 157 of May 8, 1940,[5] went

---

powered to fix the reselling price of unprocessed hulled coffee, which in no case shall be less than the price paid to the producer, plus the amount of the taxes in force on coffee."

4. The amount actually paid was short by $2.26.

5. This Act provided in pertinent part as follows: "The Treasurer of Puerto Rico is hereby authorized and directed to levy and collect for a period of ten (10) years, a special tax of one and one-half (1½) cents on each pound of raw coffee sold in Puerto Rico * * * *Provided, That this tax may be collected once only each year at the moment the first sale is made, and by 'first sale' shall be understood the sale made by the grower to any merchant, dealer, handler, * * * cooperative association * * *. *Provided, further,* That all coffee in Puerto Rico when this Act takes effect * * * shall be subject to the payment of the tax if it has not previously been paid thereon * * *. *And provided, further,* That it shall be the duty of the holders of said coffee in stock in Puerto Rico at the time this Act takes effect to declare under oath such stock within a period of ten (10) days * * * and all coffee which is not declared in accordance with the provisions hereof shall be forfeited * * *. In case that any coffee not declared in accordance with the provisions hereof, is sold after

into effect, appellant had on hand 72,443 pounds of raw coffee from the 1939–1940 crop; it did not pay any tax on this coffee. Appellant eventually sold the coffee in question at not less than 20 cents a pound. The sales price included the tax.[6]

A few years later· the then Treasurer of Puerto Rico, disagreeing with the interpretation of § 3 of Act No. 145 of May 11, 1939, made by his predecessor in office, construed the phrase "from and after the 1939–40 crop" as fixing the time when, and not the crop upon which, the levy of one and one-half cents per pound was to begin on the sale of raw coffee sold in Puerto Rico. The Treasurer, therefore, on May 19, 1942, requested the appellant to pay an additional sum of $37,314.93 which represented the difference between the tax of 1½ cents and one-quarter of a cent per pound on 2,898,082 pounds of coffee, or $36,226.02, the tax of 1½ cents per pound on the 72,443 pounds of coffee, or $1,086.65, and a deficiency of $2.26.

On October 11, 1953, after having exhausted its administrative remedies and having paid the sum requested plus interest of $24,643.07 to the Treasurer under protest, appellant brought an action for reimbursement of that sum plus interest in the General Court of Justice of Puerto Rico, San Juan Part—Tax Division. At the time the claim for reimbursement was filed, a proviso of § 2 of Act No. 328 of May 13, 1949 (Sess. Laws, p. 996) 13 L.P.R.A. § 286 note provided: "That only the person bearing the burden of the tax or excise at issue may take an appeal to the Tax Court of Puerto Rico for the review of a denial of reimbursement of any tax or excise; and an allegation in this sense, and the evidence thereof at the proper time, shall be considered as requirements for jurisdiction * * *." After a hearing, the Trial Court dismissed the complaint for lack of jurisdiction because the appellant had not proved that it had sustained the burden of the tax. On appeal, the Supreme Court of Puerto Rico, in a well documented opinion, affirmed the order of dismissal, 82 P.R.R. ———— (1961). After its motion for reconsideration was denied on June 29, 1961, appellant appealed to this Court on July 28, 1961, pursuant to former § 1293, Title 28 of the U.S.Code.[7] Neither the Trial Court nor the Supreme Court of Puerto Rico expressly decided when or on which crops the tax provided by Act No. 145 of May 11, 1939, was to be levied.

Making the assumption, without so deciding, that the tax of 1½ cents per pound was to be levied upon the sale of raw coffee from crops harvested in the latter part of 1939, and succeeding years, we think the Trial Court was correct in concluding that it was without jurisdiction to grant the relief requested by appellant. At the time that appellant was selling coffee from the 1938–1939 crop here in question, it was also selling, so far as appears, coffee from the 1939–1940 crop on which the tax passed on to the consumer was admittedly 1½ cents per pound. Appellant produced no sales receipts or invoices. At the minimum there was a burden upon it to show that the amounts received for the sale of the coffee from the 1938–1939 crop included only a ¼ of a cent per pound on account of the tax. From all that appears, appellant may have taken advantage of the situation and used the tax increase as a basis for charging as much for its

---

this provision takes effect, the Commissioner of Agriculture and Commerce shall impose on the natural or artificial person making such sale an administrative fine equivalent to the proceeds of such sale * * *."

6. The amount of the tax does not appear in the record.

7. Section 3 of Public Law 87–189, 75 Stat. 417, repealed this section of the Code and deleted paragraph (4) of § 1294 so as to eliminate the right of appeal from the Supreme Court of Puerto Rico to the Court of Appeals for the First Circuit as of August 30, 1961. The repeal did not affect appeals taken prior to that date.

1938–1939 coffee as it did for contemporary sales of coffee from the 1939–1940 crop, leading the purchasers to believe that they were paying a legitimate increased tax. If such were not the case, it would have been an easy matter for appellant to prove it. Consequently, we cannot say that the decision of the Supreme Court of Puerto Rico that appellant failed to show that it was "the person bearing the burden of the tax" was erroneous.

Judgment will be entered affirming the judgment and order of the Supreme Court of Puerto Rico.