JULIO DOMINGO SILVA Y TORRÉNS, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 274. Decided October 30, 1962.

*Enrique Báez García* and *Patria Tió Nazario* for appellant. *Arturo Estrella, Acting Solicitor General,* and *Carlos G. Látimer, Assistant Solicitor General,* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

Mr. Justice Hernández Matos delivered the opinion of the Court.

Domingo Torréns Díaz, a bachelor, died intestate on October 25, 1949, leaving neither ascendants nor descendants. He left an estate of considerable value. The former District Court of the Judicial District of Mayaguez ordered the judicial administration of that estate and appointed Lic. José Sabater as judicial administrator, to preserve and protect it, so that once the nonexistence of legitimate heirs were proved, the same would be delivered to The People of Puerto Rico pursuant to §§ 912, 913 and 914 of the Civil Code.

On November 2, 1949 Julio Domingo Silva Torréns filed an action of filiation in that District Court against the unknown heirs of the deceased. On December 21, 1949, Julia Liberata Torréns Salas filed therein another action of filiation against the unknown heirs of her father, Domingo Torréns Díaz.

After both actions were filed and at the request of the Solicitor General at that time, the court appointed Lic. Sabater as attorney to answer the complaints, to oppose the actions of filiation, and to defend the possible hereditary rights of the People of Puerto Rico. To that effect the aforesaid attorney rendered professional services in the actions of filiation which definitively prospered; Julia Liberata Torréns Salas, in her condition of acknowledged natural daughter of the deceased, and Julio Domingo Silva y Torréns, as his grandson, becoming the sole and universal heirs of Domingo Torréns Díaz.

On March 16, 1954 both made the corresponding death notice to the Secretary of the Treasury for the purposes of the settlement and payment of the inheritance tax, which divisible capital amounted to $127,668.79. The inheritance tax to be paid by each heir was fixed at $12,350.32. The total sum of the same, $24,700.64 with its interest, was paid by the heirs on September 13, 1955.

Within the judicial administration and on September 3, 1953, Lic. Sabater requested the payment of $34,465.93 for his services as judicial administrator of the inheritance and for his professional services "as attorney representative of the inheritance." The heirs opposed this. Finally, on May 27, 1955 judgment was rendered ordering the heirs of the deceased to pay Lic. Sabater $14,785 for his professional services as attorney in the cases of filiation and $495.65 for his services as judicial administrator, a total of $15,280.65. The heirs paid that sum.

On October 22, 1956 the heirs presented the Secretary of the Treasury an amended death notice, including, among the deductions to the hereditary estate, the amount of $14,785 paid to Lic. Sabater for his professional services, requesting that as consequence of that payment a readjustment be made of the inheritance tax already paid and the reimbursement of the amount which they should not have paid. On May 7, 1958 the Secretary of the Treasury denied the reimbursement.

On July 22, 1958 Julia Liberata Torréns Salas sold to her nephew, Julio Domingo Silva Torréns, for the total amount of $33,500 her shares in some seventeen urban properties of the inheritance, setting forth in the corresponding stipulation that she, through her attorney

" . . . sells to the other appearing party . . . her interest in each and every one of the urban farms above-described in order that the purchaser may dispose of them as the sole legitimate owner."

The Secretary of the Treasury refused to reconsider his refusal of reimbursement and then, the coheir Julio Domingo Silva Torréns filed before the Mayagüez Part of the Superior Court a complaint requesting the reimbursement of the tax paid in excess of the amount owed by him, as well as the one paid by his aunt, the other coheir of the deceased. The Secretary of the Treasury answered accepting some allegations and denying others, specially the one that Lic. Sabater

represented the interests of the State in the actions of filiation, alleging, on the contrary, that he represented and defended those of the inheritance exclusively. In the answer to the complaint the lack of jurisdiction and the insufficiency of the complaint were set forth as special defenses.

After several incidents the trial court rendered judgment on January 22, 1960, dismissing the complaint on the following grounds:

"Although we understand that the defense of lack of jurisdiction is not meritorious, the dismissal of this action lies because the reimbursement claimed is clearly inappropriate and besides, because the plaintiff lacks standing to request the reimbursement as to that part of the inheritance tax paid by his sister *(sic)* Julia Liberata Salas. Plaintiff's disability to claim the reimbursement of that part of this tax paid by his sister *(sic)*, because of the fact that the taxpayer herself is the only one who may claim that allegedly undue payment and also because the Treasurer has not consented to that reimbursement, is clearly established by the decision of the Supreme Court of Puerto Rico in the case of *Pedro A. Pizá, Inc.* v. *Tax Court,* 72 P. R. R. 302, 305, and the total amount of the deduction claimed by plaintiff is likewise inappropriate, because what was paid to the judicial administrator appointed by this court is not a debt of this hereditary estate which might be taken into consideration when appraising the property of this inheritance to determine the taxes to be paid. The only expense or debts which may be deducted by the Treasurer from the value of an hereditary estate are those which the deceased himself might have incurred as of the date of his death, 13 L.P.R.A. § 895, and obviously what was paid to the judicial administrator for services rendered to the hereditary estate itself are subsequent expenses inherent to the judicial administration proceeding which cannot affect the appraisal of this property in any way."

Appellant asked us to review that judgment and in his brief he assigns two errors. In the first assignment he alleges that the trial court erroneously decided that he could not request the reimbursement of the tax paid by his aunt, because he had not suffered the burden of the payment. In the

second assignment he contends that it also erroneously decided that the amounts paid to Lic. Sabater were not expenses deductible by the heirs.

## I

The grounds for his first assignment are: (a) that he was the assignee of his aunt of "all her rights and shares in the inheritance of Domingo Torréns Díaz," pursuant to the deed of July 22, 1958 and he had his aunt's right to request the reimbursement, and (b) that the indispensable requirement of the allegation and evidence of having suffered the tax burden is demanded only when it concerns payments by virtue of "excises or license tax," pursuant to § 4 of Act No. 169 of 1943, as amended by Act No. 137 of 1945.

In our judgment that error was not committed. Coheir Julia Liberata Torréns Salas paid the tax imposed on her for receiving her hereditary share on September 13, 1955. The contract made three years later with her nephew was one for "sale of interest," as stated in the public deed made for its execution. As we have already set forth, by the fourth clause she "sells to the other...appearing party...her interest in each and every one of the farms above-mentioned." The possible right of the vendor to demand the total or partial reimbursement of the tax paid by her was not transferred to her nephew. The SIXTH clause of the deed which clarifies the FOURTH [1] does not have the scope which appellant assigns to it. It only explains that the sale includes the rights of the vendor "in the property left by her deceased father" described

---

[1] The text of the SIXTH clause is the following:

"In order to clarify the FOURTH clause of this deed it is set forth that within the amount of THIRTY-THREE THOUSAND, FIVE HUNDRED DOLLARS ($33,500) are included not only the condominiums described in the FIRST clause of this deed but also every right, title and interest which the aforesaid Julia Liberata Torréns Salas, also known as Nelly Ramírez and Nelly Salas, has in the property left by her deceased father Domingo Torréns Díaz, and includes not only the property above-described but also any other property, personal or real, corporal or incorporal, which might later appear to have belonged to Domingo Torréns Díaz."

therein, or in any other property which might later appear "to have belonged to Domingo Torréns Díaz."

■ Because of the failure to include in the transfer of the right to request the tax reimbursement—which arose independently of the death of the predecessor—the owner of that right continued to be his aunt. As provided by § 26 of our Law of Evidence, in the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted.

■ The death of the predecessor occurred on October 25, 1949. The inheritance tax was paid in September 1955. In October 1956 the reimbursement was administratively requested. It was denied on September 11, 1959. The complaint against the Secretary of the Treasury was filed in the Superior Court, Mayaguez Part, three days later. The applicable law in this case is Act No. 232 of May 10, 1949 as amended by Act No. 5 of October 5, 1954. See 13 L.P.R.A. § 261 *et seq.* Section 1 therefore was invoked by appellant to request the reimbursement. In an appeal from the denial of reimbursement, the indispensable requirement of alleging and proving that appellant "has suffered the economic burden of the tax in question," refers to "any type of tax," with the sole exception of income taxes as of the amendment of 1954. *Cf. Cafeteros de Puerto Rico v. Sec. of the Treas.,* 82 P.R.R. 613 (1961), *aff'd* 305 F.2d 554.

■ No such allegation was made in the complaint respecting the inheritance tax paid by the coheir Julia Liberata Torréns Salas. We believe that what was set forth in clause 25 thereof is not equivalent to the specific and jurisdictional allegation required by the statute.

## II

We believe that the second error was committed and that the reimbursement to appellant lay, of what he paid to the State in excess of what justly corresponded him to pay as

grandson of the deceased and in conformance with what he actually received in payment of his hereditary share.

From October 25, 1949, date in which the deceased Torréns Díaz died, until December 24, 1953, day in which we declared Julia Liberata Salas his acknowledged natural daughter— *Salas* v. *Doe; Silva, Int.*, 75 P.R.R. 537—all the assets of the hereditary estate of the deceased lay in wait for the determination of the continuity of the deceased's juridical person with that of those who would succeed him in the ownership of things and rights. That is, its legal situation during those four years and two months was that of a vacant inheritance. His property was submitted to a judicial administration ordered by the former District Court of Mayagüez, under the impression, as appellant states, "that for lack of heirs, the property would become the State's." Lic. José Sabater was appointed judicial administrator to manage, preserve, and defend them. When the actions of filiation were filed that court issued an order (on March 23, 1950) appointing the same administrator, but in his condition of attorney, to "appear as defendants' attorney in all those cases in which he were a party or in which he were bound to intervene in representation of the interests of the inheritance." [2]

By virtue of the above-mentioned orders the aforesaid attorney intervened in both actions of filiation in representation of the defendant party therein, the unknown heirs John Doe and Richard Roe. When those services were rendered, the attorney requested that they be paid from the hereditary estate. The already known heirs opposed this. Over their objection, the trial court granted it and appraised those services at $14,785, ordering its payment by the heirs. The latter made the payment, each hereditary share being thereby reduced by $7,392.50.[3]

---

[2] In cases such as these, one of the duties imposed by the law on the judicial administrator is "to begin proceedings for the purpose of ascertaining who are the heirs." Section 555, Code of Civil Procedure, 1933 ed.

[3] We are not making any determination herein respecting whose duty it was, by law, to pay the amount of such services. Apparently that

In his opposition to the review sought—p. 6—the Secretary of the Treasury accepts that those services were rendered "to the hereditary estate, which during the administration period, should be defended from third parties." In his brief on the merits of the appeal—pp. 1 and 2—he again accepts it and, also, states that the heirs "paid the amounts in question to Lic. Sabater with money *proceeding from said inheritance.*" Emphasis in the original.

In spite of the fact that in its judgment the trial court also acknowledged that those services were rendered "to the hereditary estate," it definitively dismissed the complaint for the reasons which it textually set forth as follows:

". . . and the total amount of the deduction claimed by plaintiff is likewise inappropriate, because what was paid to the judicial administrator appointed by this court is not a debt of this hereditary estate which might be taken into consideration when appraising the property of this inheritance to determine the taxes to be paid. The only expense or debts which may be deducted by the Treasurer from the value of an hereditary estate are those which the deceased himself might have incurred as of the date of his death, 13 L.P.R.A. § 895 and obviously what was paid to the judicial administrator for services rendered to the hereditary estate itself are subsequent expenses inherent to the judicial administration proceeding which can not affect the appraisal of this property in any way."

■ Neither the appraisal of the inheritance estate is the main or sole factor in the determination of the tax, nor are the debts incurred by the predecessor himself, and which are pending payment upon his death, the only deductible expenses.

■ The afore-cited § 895 of 13 L.P.R.A.—§ 6 of Act No. 99 of 1925—merely provides that all estates of decedents shall be appraised at their market value as of the date of the predecessor's death. The tax is not imposed by simply

question was raised and decided by the Superior Court, Mayaguez Part, in the aforesaid manner, without the review of the order or judgment which decided it having ever been requested.

dividing the value of those estates, fixed pursuant to the law, by the number of heirs. The evident purpose of that section was to avoid arbitrary and capricious appraisals, foreign to the economic reality existing at the time the estate was inherited, and to establish a reasonable criterion of appraisal of the hereditary estate, in order to establish its total value as one of the possibilities or grounds to be considered in the fiscal administrative proceeding in which the inheritance tax to be paid is finally determined.

■ The method prevailing here is not to tax the right to transfer the totality of the hereditary estate, but to tax the right or privilege of each heir, legatee, or beneficiary of the inheritance to receive his liquid or individual share.[4]

■ In the ordinary course of the partition of an estate, the operations that have been deemed traditionally necessary are those of inventory, appraisal, confirmation, liquidation, partition, and adjudication. The stage of the liquidation is one of the most complicated, since it entails, among other things, the determination of community property, of the decedent's separate property, the amount of the special debts against the deceased's estate, the legal portion of the forced heirs, that of the widowed spouse, the improvements, the legacies. The operation of partition which follows, consists in the assignment of the numerical portion which corresponds to each heir or beneficiary, for one or several reasons. The appraisal consists in fixing the value of each one of the properties inventoried, for the purpose of numerically determining its importance.

By Royal Decree of July 4, 1885, added by the Budget Act of 1893, the so-called tax of "Royal Dues" on transfer of property was created, thereby charging a certain per cent

---

[4] See *Descartes, Treas.* v. *Tax Court; Heirs of Luchetti, Int.,* 79 P.R.R. 128, 131 (1956); *Veve* v. *Secretary of the Treasury,* 78 P.R.R. 695, 699 (1955); *Kessler* v. *Domenech, Treas.,* 49 P.R.R. 189, 205–06 (1935); *Legislación, Derecho Fiscal,* 16 *Revista de la Universidad de Puerto Rico* 195-209; *Freeman* v. *Noguera, Secretary of the Treasury,* 82 P.R.R. 298 (1961).

on the value of every sale, gift, mortgage or inheritance on real property. The registries of property themselves were in charge of the liquidation as a prerequisite to the registration, and it was made by the registrars with a view to the deed of partition. The General Order No. 16 of November 26, 1898 abolished the tax and by No. 147 of September 23, 1899, the remittance of all that was pending payment for that reason was decreed.[5]

The tax was reinstated on March 1, 1902 with the name of "Inheritance Tax" by virtue of §§ 368 to 383 of the Political Code which was then approved. Those sections were finally substituted by Act No. 99 of 1925, which with its amendments, governs the subject matter. The "most capital" defect of that law, as professor Muñoz Morales states, is that "it obliges the interested parties to make a provisional liquidation and partition for the purposes of that inheritance tax which can not be changed later, when the most rational and logical alternative would be to authorize the final liquidation and partition and to impose thereon the corresponding tax." [6]

The Inheritance and Gift Act does not specify which are the hereditary debts to be deducted.

Section 1017 of the Civil Code states that: "the costs of the division made for the common interests of all the coheirs shall be deducted from the estate" and that "those made for the particular interest of one of them shall be defrayed by the same."

Commenting on its concomitant section of the Spanish Civil Code in the recent work "Derecho de Sucesiones", Parte General at p. 526, by Albaladejo and Lacruz, these scholars state, in part, the following:

"On the other hand, the term 'partition expenses' can not be construed in too strict a sense; also those which precede it and render it possible shall be deducted from the inheritance:

---

[5] Luis Muñoz Morales, Anotaciones al Código Civil, Third Book, pp. 436, 437.

[6] Muñoz Morales, op. cit., 437.

Mucius Scaevola cites, to this respect, the expenses used in the administration of the hereditary estate (argument arts. 1033 C. and 1019 Lec.) (Citation.) As an ordinary expense of the inheritance those expenses which have arisen from the liquidation of the conjugal partnership must be defrayed from it. As Planiol states, these expenses will be partitioned proportionately to the relative importance of the two undivided portions, and upon partition, the proportional share which belongs to the deceased will be deducted from the inheritance."

Section 987 also provides that the expenses arising from the administration of the inheritance, accepted under the benefit of inventory and the defense of its rights, shall be charged to said estate.

In § 586 of the Code of Civil Procedure it is provided in part that the administrator and executor shall be paid from the estate for the necessary expenses incurred in administration, including maintenance and care of the property and legal counsel. Section 574 authorizes the court to provide for the retention of a sufficient amount for certain disbursements during the administration for "litigation" expenses.[7]

 If, as the trial court decided and the Secretary of the Treasury admits in his brief, what was paid to Lic. Sabater was for "services rendered to the hereditary estate," and its amount was paid "with money from said estate," and if its payment was involuntary because the heirs were obliged by judicial decree to pay them as a responsibility or charge against the inheritance incurred in the course of determining who were the legal heirs of the predecessor, it was not legally

---

[7] In *Franceschi* v. *District Court*, 45 P.R.R. 646, 651 (1933), we decided that attorney's fees for services rendered to the judicial administration must be paid from the estate. We cited several federal cases, among them, that of *Carpenter* v. *Hazel*, 194 S.W. 225 (Ark.), where it was held that "An amount paid to an attorney for conducting litigation for the benefit of an estate is a part of the expenses of administration, and payment of the amount is a distribution of a part of the assets of the estate."

In *Boerman* v. *Heirs of Boerman*, 52 P.R.R. 593, 601 (1938), we decided that up to the moment of delivering the estate to the heirs the administrator had the right to employ the services of attorneys whenever necessary for its protection and conservation.

appropriate, nor just, that the sum of $14,785 be considered as part of the hereditary gift "received" by the heirs. The fact that the amount determined as services to the hereditary estate was satisfied after the payment of the inheritance tax, can not alter our conclusion.

 Payment is made for the inheritance received. No payment can be made for what is not received. The computation of the tax is made on the numerical amount of the "gift received by the recipient." (13 L.P.R.A. § 883.) It is based on what actually falls into the hands of the heir or beneficiary. It is only after that liquid share is determined that the deductions named "exemptions", of § 886 are applied.

In view of the foregoing, the Secretary of the Treasury shall deduct from the amount of the hereditary share, originally reported on March 16, 1954, and only as to coheir Julio Domingo Silva Torréns, the part paid by the latter for said services, that is, the sum of $7,392.50, and then he shall compute the inheritance tax to be paid by him as such heir, whereupon he shall then reimburse to said appellant the amount the latter paid in excess of what he was bound to pay, and the amount of interest corresponding to that excess which he might have paid, plus the interest corresponding as of the date in which the reimbursement was requested. In this sense the judgment appealed from will be modified.