JULIO DOMINGO SILVA Y TORRÉNS, demandante y recurrente, v. SECRETARIO DE HACIENDA, demandado y recurrido.

Número: 274    Resuelto: 30 de octubre de 1962

*Enrique Báez García* y *Patria Tió Nazario,* abogados del recurrente; *Arturo Estrella, Procurador General Interino* y *Carlos G. Látimer, Procurador General Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Domingo Torréns Díaz falleció intestado el 25 de octubre de 1949, en estado de soltería, sin dejar ascendientes ni descendientes conocidos. Dejó bienes de considerable valor. La extinta Corte de Distrito del Distrito Judicial de Mayagüez decretó la administración judicial de esos bienes y designó administrador judicial al Lic. José Sabater, para que los conservara y defendiera, de manera que una vez que se justificara la no existencia de herederos legítimos se entregaran los mismos a El Pueblo de Puerto Rico con arreglo a los Arts. 912, 913 y 914 del Código Civil.

El 2 de noviembre de 1949 Julio Domingo Silva Torréns presentó demanda de filiación ante esa Corte de Distrito, dirigida contra los herederos desconocidos del causante. El 21 de diciembre de 1949, Julia Liberata Torréns Salas presentó allí otra demanda de filiación contra la sucesión desconocida de su padre Domingo Torréns Díaz.

Luego de la radicación de ambos pleitos, a petición del entonces Procurador General, la corte designó al Lic. Sabater para que en su condición de abogado contestara las demandas, se opusiera a las acciones de filiación y defendiera los posibles derechos hereditarios de El Pueblo de Puerto Rico. A esos efectos dicho abogado prestó sus servicios profesionales en las acciones filiatorias que definitivamente prosperaron, convirtiéndose Julia Liberata Torréns Salas, en su condición

de hija natural reconocida del causante, y Julio Domingo Silva y Torréns como su nieto, en únicos y universales herederos de Domingo Torréns Díaz.

El 16 de marzo de 1954 ambos hicieron la correspondiente notificación de defunción al Secretario de Hacienda a los fines de la liquidación y pago de la contribución de herencia, cuyo capital partible ascendió a $127,668.79. Se fijó en $12,350.32 la contribución de herencia a pagar por cada heredero. La suma total de la misma, $24,700.64 con sus intereses fue satisfecha por los herederos el 13 de septiembre de 1955.

Dentro de la administración judicial y en 3 de septiembre de 1953 solicitó el Lic. Sabater el pago de $34,465.93 por sus servicios como administrador judicial de la herencia y por su labor profesional "como abogado representante de la herencia." Se opusieron a ello los herederos. Finalmente el 27 de mayo de 1955 se dictó resolución condenando a los dos herederos del causante a pagar al Lic. Sabater $14,785.00 por su labor profesional como abogado en los casos de filiación y $495.65 por sus servicios como administrador judicial, en total $15,280.65. Los herederos pagaron esa suma.

El 22 de octubre de 1956 los herederos presentaron al Secretario de Hacienda una notificación de defunción enmendada, incluyendo entre las deducciones al caudal hereditario la cantidad de $14,785.00 pagada por labor profesional al Lic. Sabater, solicitando que como consecuencia de ese pago se hiciera un reajuste de la contribución de herencia ya satisfecha y se les reintegrara las cantidades que no debieron pagar. El 7 de mayo de 1958 el Secretario de Hacienda denegó el reintegro.

El 22 de julio de 1958 Julia Liberata Torréns Salas vendió a su sobrino, Julio Domingo Silva Torréns por la suma total de $33,500.00, los condominios que ella tenía sobre unas diecisiete propiedades urbanas de la herencia, haciéndose constar en la estipulación correspondiente que ella, por conducto de su apoderado

" . . . vende al otro compareciente . . . sus condominios en todas y cada una de las fincas urbanas anteriormente descritas a fin de que el comprador pueda disponer de las mismas como único y legítimo dueño."

El Secretario de Hacienda se negó a reconsiderar su negativa a la solicitud de reintegro, y, entonces, el coheredero Julio Domingo Silva Torréns radicó ante la Sala de Mayagüez del Tribunal Superior su demanda solicitando el reintegro tanto de la contribución pagada en exceso de la cantidad debida por él como la pagada por su tía, la otra heredera del causante. La contestó el Secretario de Hacienda aceptando varias alegaciones y negando otras, especialmente la de que el Lic. Sabater representaba los intereses del Estado en los pleitos de filiación, alegando en contrario que representaba y defendía los de la herencia exclusivamente. Como defensas especiales se expusieron en la contestación la falta de jurisdicción y la insuficiencia de la demanda.

Después de varios incidentes, el tribunal de instancia dictó sentencia el 22 de enero de 1960, desestimando la demanda bajo los siguientes fundamentos:

"Aunque entendemos que la defensa de falta de jurisdicción no es meritoria, procede la desestimación de esta acción por ser claramente improcedente el reintegro que se reclama y por carecer además el demandante de facultad para solicitar este reintegro en cuanto a la parte de la contribución de herencia pagada por su hermana [sic] Julia Liberata Salas. El impedimento del demandante para reclamar el reintegro de la parte de esta contribución pagada por su hermana [sic], por la razón de ser solamente la propia contribuyente la única que puede reclamar ese alegado pago indebido y por no estar además ese reintegro consentido por el Tesorero, está claramente establecido por lo resuelto por el Tribunal Supremo de Puerto Rico en el caso de *Pizá* v. *Tribunal*, 72 D.P.R. 320, 323, y la totalidad de la deducción reclamada por el demandante resulta asimismo improcedente ya que lo pagado al Administrador Judicial designado por este Tribunal no constituye una deuda de este caudal hereditario que pueda ser tomada en consideración al valorarse los bienes de esta herencia para determinar la con-

tribución a pagar. Los únicos gastos o deudas que pueden ser rebajados del valor de un caudal hereditario por el Tesorero son aquellos en que hubiese incurrido el propio causante con anterioridad y hasta el momento de su muerte, 13 L.P.R.A. sec. 895, y obviamente lo pagado al administrador judicial por servicios prestados al propio caudal hereditario son gastos posteriores inherentes al procedimiento de administración judicial que en nada pueden afectar la valoración de estos bienes para el pago de la contribución de herencia."

Nos pidió el recurrente la revisión de esa sentencia y en su alegato señala la comisión de dos errores. Por el primero sostiene que el tribunal de instancia resolvió erróneamente que él no podía pedir el reintegro de la contribución pagada por su tía porque no había sufrido el peso del pago de la misma. Por el segundo, que también resolvió erróneamente que las cantidades pagadas al Lic. Sabater no eran gastos deducibles por los herederos.

## I

Los fundamentos de su primer señalamiento son: (a) que él era cesionario de su tía de "todos sus derechos y acciones en la herencia de Domingo Torréns Díaz", conforme a la escritura de venta del 22 de julio de 1958 y el derecho de su tía a solicitar el reintegro él lo tenía, y (b) que el indispensable requisito de la alegación y prueba de haberse sufrido el peso del pago se exige únicamente cuando se trata de pagos por concepto de "arbitrios o contribución de licencias", con arreglo a la sección 4 de la Ley Núm. 169 de 1943, según enmendada por la Núm. 137 de 1945.

A juicio nuestro no fue cometido ese error. La coheredera Julia Liberata Torréns Salas pagó la contribución que se le impuso por recibir su participación hereditaria el 13 de setiembre de 1955. El contrato que tres años después celebró con su sobrino Julio Domingo Silva Torréns fue uno sobre "Venta de Condominios", según reza la escritura pública que lo formalizó. Como ya hemos expuesto, ella por el párrafo cuarto le "vende al otro . . . compareciente . . .

sus condominios en todas y cada una de las fincas anteriormente descritas." El posible derecho de la vendedora a exigir el reintegro total o parcial de la contribución satisfecha por ella no fue trasmitido a su sobrino. El párrafo SEXTO del documento en que se aclara el CUARTO([1]) no tiene el alcance que le atribuye el recurrente. Únicamente explica que la compraventa abarca los derechos de la vendedora " en los bienes dejados por su extinto padre" que allí se describen, o en cualquier otra propiedad que pudiera luego aparecer "que haya pertenecido a Domingo Torréns Díaz." ■

Al no incluirse en la trasmisión el derecho a solicitar el reintegro contributivo—que surgió independientemente de la muerte del causante—, el titular de ese derecho siguió siendo su tía. Como dispone el Art. 26 de nuestra Ley de Evidencia, al interpretar un documento el ministerio del juez es simplemente averiguar y declarar lo que textualmente y en sustancia contiene, no insertar lo que se hubiera omitido, ni omitir lo que se hubiere insertado. ■

El fallecimiento del causante ocurrió el 25 de octubre de 1949. La contribución de herencia fue satisfecha en setiembre de 1955. En octubre de 1956 se solicitó administrativamente el reintegro. Se denegó el 11 de setiembre de 1959. La demanda contra el Secretario de Hacienda fue presentada ante el Tribunal Superior, Sala de Mayagüez, tres días después. La ley aplicable al caso es la Núm. 232 de 10 de mayo de 1949, tal como fue enmendada por la Núm. 5 de 5 de octubre de 1954.—Véase 13 L.P.R.A., sec-

---

([1]) El texto del párrafo SEXTO es el siguiente:

"Aclarando el apartado CUARTO de esta escritura se hace constar que dentro de la cantidad de TREINTA Y TRES MIL QUINIENTOS DÓLARES ($33,500.00) están incluidos no solamente los condominios descritos en el apartado PRIMERO de esta escritura sino todo derecho, título e interés que dicha Julia Liberata Torréns Salas, conocida indistintamente por Nelly Ramírez y Nelly Salas, tiene en los bienes dejados por su extinto padre Domingo Torréns Díaz e incluye no solamente los bienes anteriormente descritos sino cualquier otra propiedad, mueble e inmueble, corporal o incorporal, que pueda aparecer en lo sucesivo que haya pertenecido a Domingo Torréns Díaz."

ción 261 y siguientes.—Su Art. 1 fue el que invocó el recurrente para solicitar el reintegro. El indispensable requisito para recurrir judicialmente contra la denegatoria de reintegro, de alegarse y probarse que el recurrente "ha sufrido el peso del pago de la contribución en discusión", se refiere a "una contribución de cualquier clase", con la única excepción de las contribuciones sobre ingresos a partir de la enmienda del 1954. Cfr. *Cafeteros de Puerto Rico* v. *Secretario de Hacienda*, 82 D.P.R. 633 (1961), conf. 305 F.2d 554. ■

.En la demanda no se hizo tal alegación respecto a la contribución de herencia satisfecha por la coheredera Julia Liberata Torréns Salas. Estimamos que lo expuesto en el párrafo 25 de la misma no equivale a la alegación específica y jurisdiccional exigida por el estatuto.

## II

Consideramos que el segundo error fue cometido y que procedía el reintegro al recurrente de lo que pagó al Estado en exceso de lo que a él le correspondía en justicia satisfacer como nieto del causante y conforme a lo que recibió actualmente en pago de su participación hereditaria.

Desde el 25 de octubre de 1949, fecha en que falleció el causante Torréns Díaz, hasta el 24 de diciembre de 1953, día en que declaramos a Julia Liberata Salas hija natural reconocida suya—*Salas* v. *Doe*, 75 D.P.R. 571—toda la masa de bienes hereditarios relicta estuvo en espera de que se determinara la continuidad de la persona jurídica del causante con las de los que habrían de sucederle en el dominio de cosas y derechos. Es decir, su situación legal, durante esos cuatro años y dos meses fue la de una herencia vacante. Sus bienes fueron sometidos a una administración judicial decretada por la extinta Corte de Distrito de Mayagüez, bajo la impresión, según expone el recurrente, "de que, a falta de herederos, pasarían a la propiedad del Estado." Para administrarlos, conservarlos y defenderlos se designó admi-

nistrador judicial al Lic. José Sabater. Al radicarse los pleitos de filiación esa corte dictó una orden (en 23 de marzo de 1950) encomendando al propio administrador, pero en su condición de abogado, para que "compareciera como abogado de los demandados en todos aquellos casos en que fuera parte o debiera intervenir en representación de los intereses de la herencia." (2)

Por lo así ordenado, en ambas acciones filiatorias intervino dicho letrado en representación de la parte allí demandada, los herederos desconocidos John Doe y Richard Roe. Terminada la prestación de esos servicios, pidió el letrado que se los pagasen con cargo a los bienes de la herencia. A ello se opusieron los ya conocidos herederos. No obstante esa oposición, el tribunal de instancia los concedió y valoró en $14,785.00, y ordenó su pago por los herederos. Éstos así los pagaron quedando reducida cada participación hereditaria en la suma de $7,392.50. (3)

En su oposición a la expedición del recurso—pág. 6— acepta el Secretario de Hacienda que esos servicios se prestaron "al caudal hereditario, el cual debe ser, durante el período de administración, defendido de las reclamaciones de terceros." En su informe sobre los méritos del recurso— págs. 1 y 2—así lo vuelve a aceptar y, además, expone que los herederos "pagaron las cantidades en cuestión al Lic. Sabater con dinero *procedente de dicha herencia.*"—Subrayado en el original.

A pesar de que en su sentencia el tribunal recurrido también reconoció que esos servicios fueron prestados "al caudal

---

(2) En casos como éstos, uno de los deberes impuestos por la ley al administrador judicial es el de "instruir los procedimientos necesarios para determinar los herederos." Art. 555, Enjuiciamiento Civil, Ed. 1933.

(3) No estamos aquí haciendo determinación alguna respecto a quién correspondía en derecho satisfacer el importe de tales servicios. Aparentemente esa cuestión fue planteada y resuelta por el Tribunal Superior, Sala de Mayagüez, en la forma expuesta, sin que en época alguna se pidiera la revisión de la resolución o sentencia que la decidió.

hereditario", desestimó definitivamente la demanda por las razones que expuso textualmente así:

" . . . y la totalidad de la deducción reclamada por el demandante resulta asimismo improcedente ya que lo pagado al Administrador Judicial designado por este Tribunal no constituye una deuda de este caudal hereditario que pueda ser tomada en consideración al valorarse los bienes de esta herencia para determinar la contribución a pagar. Los únicos gastos o deudas que pueden ser rebajados del valor de un caudal hereditario por el Tesorero son aquellos en que hubiese incurrido el propio causante con anterioridad y hasta el momento de su muerte, 13 L.P.R.A., sec. 895, y obviamente lo pagado al administrador judicial por servicios prestados al propio caudal hereditario son gastos posteriores inherentes al procedimiento de administración judicial que en nada pueden afectar la valoración de estos bienes para el pago de la contribución de herencia." ■

Ni la valoración de los bienes de la herencia es el factor primordial o único en la determinación de la contribución, ni las deudas incurridas por el propio causante y pendientes de pago al morir son las únicas bajas deducibles para fijarlas. ■

Por la citada sección 895 del título 13 de L.P.R.A.—Art. 6 de la Ley Núm. 99 de 1925—solamente se dispone que se tasarán por su valor en el mercado a la fecha del fallecimiento los bienes del causante. La contribución no se impone simplemente dividiendo el valor de esos bienes, fijado conforme a esa norma, por el número de herederos. El propósito claro de esa sección fue evitar valoraciones arbitrarias y caprichosas, ajenas a la realidad económica imperante al momento de abrirse la sucesión, y establecer un razonable criterio de valoración de los bienes hereditarios, para estimarse el valor total de ellos como uno de los supuestos o bases a considerar en el procedimiento fiscal administrativo en que se determina finalmente la contribución de herencia a pagar. ■

El método que aquí prevalece no es el de la contribución sobre el derecho a transferir la totalidad de la masa heredi-

342

taria, sino el de la tributación sobre el derecho o privilegio de recibir su participación líquida e individual cada heredero, legatario o beneficiario de la herencia. (⁴) ■

En el curso ordinario de una partición de herencia, tradicionalmente se han estimado como operaciones necesarias, las de inventario, avalúo, colación, liquidación, división y adjudicación.  La etapa de la liquidación es de las más complicadas, puesto que en ella tiene lugar, entre otras cosas, la determinación de los bienes gananciales, los privativos del causante, el importe de las bajas especiales contra el caudal del finado, las legítimas de los herederos forzosos, la del cónyuge viudo, las mejoras, los legados.  La operación de división que le sigue consiste en el señalamiento de la cuota numérica que a cada heredero o legatario corresponda, por uno o varios conceptos.  El avalúo consiste en la fijación del valor de cada uno de los bienes inventariados, al efecto de poder determinar numéricamente su importancia.

Por el Real Decreto de 4 de julio de 1885, adicionado por la ley de presupuestos de 1893, se creó el llamado impuesto de "Derechos Reales" sobre trasmisión de bienes, cobrándose un tanto por ciento sobre el valor de toda venta, donación, hipoteca o herencia sobre bienes inmuebles.  De su liquidación se encargaban los mismos Registros de la Propiedad como requisito previo a la inscripción y se verificaba por los registradores con vista a la escritura de partición.  La orden general núm. 16 de 26 de noviembre de 1898 abolió ese impuesto y por la Núm. 147 de 23 de setiembre de 1899, se decretó la condonación de todo lo pendiente de pago por ese concepto. (⁵) ■

---

(⁴) Véanse *Descartes, Tes.* v. *Tribunal de Contribuciones,* 79 D.P.R. 135, 138 (1956) ; *Veve* v. *Secretario de Hacienda,* 78 D.P.R. 731, 735 (1955) ; *Kessler* v. *Domenech, Tes.,* 49 D.P.R. 196, 213 (1935) ; Legislación, Derecho Fiscal, Revista de la Universidad de Puerto Rico, Tomo 16, págs. 193-209. *Freeman* v. *Secretario de Hacienda,* 82 D.P.R. 307 (1961).

(⁵) Luis Muñoz Morales, Anotaciones al Código Civil, Libro Tercero, págs. 436, 437.

Con el nombre de "Contribución sobre Herencia" se restituyó en 1 de marzo de 1902 el impuesto, mediante los artículos 368 a 383 del Código Político que entonces se aprobó. Esos artículos fueron finalmente sustituidos por la Ley Núm. 99 de 1925, que con sus enmiendas, rige la materia. El defecto "capitalísimo" de esta ley, según afirma el Profesor Muñoz Morales, es que "obliga a los interesados a hacer una liquidación y partición provisional para los efectos de esa contribución de herencia, y que luego no puede variarse, cuando lo más racional y lógico sería autorizar la liquidación y partición definitiva y sobre ella imponer la correspondiente contribución." (6) ■

La ley de contribuciones sobre herencias y donaciones no especifica cuáles son las deudas hereditarias a deducir.

En el Código Civil, y en su artículo 1017 se dice que "los gastos de partición hechos en interés común de todos los herederos se deducirán de la herencia" y que "los hechos en interés particular de uno de ellos serán a cargo del mismo."

Comentando su concordante del Código Civil español, en la reciente obra "Derecho de Sucesiones", Parte General, pág. 526, de Albaladejo y Lacruz, estos catedráticos, en parte, se expresan así:

"Por otra parte, el término 'gastos de la partición' no puede interpretarse en un sentido demasiado estricto; también los que la preceden y la hacen posible deberán deducirse de la herencia: Mucius Scaevola, cita, a este respecto, los gastos empleados en la administración de la masa hereditaria (argumento arts. 1033 C. y 1019 Lec.) (Cita.) Como gasto común de la herencia habrá que deducir de ella los que se hayan ocasionado para la liquidación de la sociedad conyugal. Como dice Planiol, estos gastos se repartirán proporcionalmente a la importancia relativa de las dos masas indivisas, y se deducirá de la herencia, al partir, la parte proporcional que al causante corresponda."

En el 987 dispone también que los gastos a que dé lugar la administración de la herencia aceptada a beneficio de in-

---

(6) Muñoz Morales, obra citada, pág. 437.

ventario y la defensa de sus derechos, serán a cargo de la misma herencia.

En su artículo 586, el Código de Enjuiciamiento Civil, en parte dispone que con dinero de la herencia se abonarán al administrador o albacea los gastos indispensables que ocasione la administración, incluso los de la conservación y guarda de los bienes y las consultas de abogados. En el 574 se faculta al tribunal disponer la retención de una cantidad suficiente para ciertos dispendios durante la administración para gastos "de pleitos." (7) █

Si, como resolvió el tribunal recurrido y admite el Secretario de Hacienda en su alegato, lo satisfecho al Lic. Sabater fue por "servicios prestados al caudal hereditario" y su importe se pagó "con dinero procedente de dicha herencia", y si su pago fue involuntario porque los herederos fueron obligados por mandato judicial a pagarlos como responsabilidad o carga contra la herencia incurrida en el proceso de la determinación de los herederos legales del causante, no procedía en derecho, ni era justo, que se considerara su importe de $14,785.00 como parte de la donación hereditaria "recibida" por los herederos. La circunstancia de haberse cubierto lo que se determinó como servicios al caudal hereditario después del pago de la contribución de herencia no puede alterar nuestra conclusión. █

Se paga por la herencia que se recibe. Por la parte que no se recibe no procede pagarse. El cómputo contributivo

(7) En *Franceschi* v. *Corte*, 45 D.P.R. 666, 672 (1933), resolvimos que deben satisfacerse, con los bienes de la herencia los honorarios de abogado por servicios prestados a la administración judicial. Citamos varios casos continentales, entre ellos el de *Carpenter* v. *Hazel*, 194 S.W. 225, —Arkansas—donde se sostuvo que "Una cantidad pagada a un abogado encargado de litigación para el beneficio de la herencia, es una parte de los gastos de administración y el pago de dicha cantidad es una distribución de una parte de los bienes de la herencia."

En *Boerman* v. *Herederos de Boerman*, 52 D.P.R. 611, 620 (1938) resolvimos que hasta el momento de entregar los bienes a los herederos el administrador tenía derecho a utilizar los servicios de abogados necesarios para protegerlos o preservarlos.

se hace sobre el importe numérico de la "donación que recibe el donatario" (sec. 883, tít. 13 L.P.R.A.). Es sobre lo que limpiamente cae en el estanque del heredero o legatario. Después que se determina esa participación líquida es que se aplican las deducciones denominadas "exenciones", de la sección 886.

*Por lo expuesto, el Secretario de Hacienda deberá deducir del importe de la participación hereditaria informada originalmente el 16 de marzo de 1954 y sólo en cuanto se refiere al coheredero Julio Domingo Silva Torréns, la parte satisfecha por él de dichos servicios o sea la suma de $7,392.50, y luego computar la contribución de herencia a pagar por él como tal heredero, debiendo hacer entonces a dicho recurrente el reintegro de la cantidad satisfecha por él en exceso de lo que le correspondía satisfacer, y de la parte de intereses correspondientes a ese exceso que él hubiera pagado, más los intereses correspondientes desde la fecha en que se solicitó el reintegro. En esta forma deberá modificarse el fallo recurrido.*