ESTEBAN REUS GARCÍA ET AL., demandantes y recurridos, *v.* JORGE FONT SALDAÑA, SECRETARIO DE HACIENDA, demandado y recurrente.

*Número:* R-68-235        *Resuelto:* 29 de abril de 1969

*Rafael A. Rivera Cruz, Procurador General, J. F. Rodríguez Rivera, Subprocurador General, y Juan José Ríos Martínez, Procurador General Auxiliar,* abogados del recurrente; *Raúl Matos* y *Raúl E. Matos,* abogados de los recurridos.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

Doña Matilda Moore Wilmerding falleció en 19 de junio de 1967 bajo testamento en el cual designó como albaceas a su hermana Edna y al Reverendo Esteban Reus García, confiriéndoles "aquellas facultades necesarias en derecho para la administración del caudal relicto a su óbito, el cobro de créditos, el pago de la contribución de herencia, deudas, legados y donaciones, la cancelación de hipotecas, y la realización de las gestiones necesarias para ejecutar lo dispuesto en su testamento." Véanse, Arts. 823 y 824 del Código Civil, 31 L.P.R.A. secs. 2520 y 2521. Nueve días después se expidieron las correspondientes cartas testamentarias.

El valor de los bienes relictos ascendió a $396,605.25. A los fines de la liquidación de la contribución sobre herencia se admitieron deducciones y bajas montantes a $10,636.83, fijándose, por tanto, en $385,968.42 el valor de los bienes sujetos a contribución. Se impuso una contribución total de $79,577.24 que fue satisfecha en 3 de noviembre de 1967.

Dos meses y medio después los albaceas solicitaron el reintegro de la suma de $7,861.75 aduciendo que al practicarse la liquidación no se consideraron como bajas del caudal

las cantidades de $5,000 y $3,000, satisfechas a los albaceas por sus servicios, y de $20,000, pagados por honorarios de abogado en la tramitación de la testamentaría. Advertimos que, con excepción de un anticipo de $4,000 al abogado Raúl Matos efectuado en 18 de agosto de 1967, el remanente de las sumas reclamadas como deducción fue satisfecho con posterioridad a la liquidación y pago de la contribución de herencia. [1] Negada la solicitud de reintegro, entablóse la correspondiente acción judicial. En el acto del juicio se estipularon los hechos relatados precedentemente y además se ofreció el testimonio del Reverendo Reus para acreditar los extremos sobre los pagos hechos y establecer que la distribución de los bienes se realizó una vez efectuados dichos pagos.

Fundándose exclusivamente en *Silva* v. *Srio. de Hacienda*, 86 D.P.R. 332 (1962) y *Manautou* v. *Srio. de Hacienda*, 87 D.P.R. 185, 197–198 (1963), el tribunal de instancia estimó la procedencia del reintegro, y ordenó al Secretario de Hacienda a devolver la suma reclamada de $7,861.75, más intereses legales desde el 3 de noviembre de 1967 hasta la fecha de su total pago, con imposición de costas. [2] Acordamos revisar.

▅ Conviene advertir de inmediato que los casos de *Silva* y *Manautou*, supra, no establecen concluyentemente que bajo la Ley Núm. 303 de 12 de abril de 1946 (Leyes, pág.

---

[1] A los albaceas se les extendieron cheques en 15 de noviembre de 1967, al abogado, $7,500 en 15 de noviembre, $7,000 en 2 de enero de 1968, y $1,500 en una fecha que no es posible precisar.

[2] El Art. 4 de la Ley Núm. 328 de 13 de mayo de 1949, 13 L.P.R.A. sec. 287, sólo autoriza la devolución al contribuyente de las cantidades satisfechas conforme al arancel de cancelación de derechos en pleitos contributivos. Véase la Regla 44.4(a) de las de Procedimiento Civil. Observamos, de paso, que la parte actora no canceló los derechos prescritos en el inciso (c) de dicho artículo.

El Art. 8 de la Ley de Pleitos contra el Estado, 32 L.P.R.A. sec. 3083, que dispone que la imposición de costas se regirá por el procedimiento ordinario, no es de aplicación. Véase, *Sucn. Arroyo* v. *Municipio*, 81 D.P.R. 434 (1959).

783), las retribuciones a los albaceas y los honorarios de abogado por la tramitación de una testamentaría o un abintestato, según fuere el caso, son siempre admisibles como bajas al caudal hereditario. Como veremos, ambos envolvían situaciones peculiares que justificaron la procedencia de la deducibilidad. Preciso es reiterar que por tratarse la Ley de Contribución sobre Herencias y Donaciones de una medida de carácter puramente fiscal no siempre coinciden los conceptos del Derecho civil común y el Derecho tributario. Específicamente, el caudal neto sujeto a distribución entre los herederos conforme a los preceptos del derecho sucesorio no es necesariamente el que está sujeto a la imposición contributiva por la transferencia operada en virtud de la muerte del testador o causante. Cf. *Rexach* v. *Secretario de Hacienda*, 96 D.P.R. 913 (1969); *Albanese* v. *Secretario de Hacienda*, 76 D.P.R. 324 (1954).

En *Silva*, supra, sostuvimos que los honorarios de abogado y la compensación por servicios prestados por un *administrador* a un caudal hereditario eran deducibles del valor total de los bienes relictos cuando el pago fue involuntario— efectuado en cumplimiento de una resolución judicial—y la responsabilidad fue incurrida en el proceso de determinar la identidad de los herederos del causante en una herencia hasta entonces yacente. En *Manautou*, supra, los honorarios de abogado se satisficieron por servicios profesionales prestados para la disolución de un fideicomiso constituido por el testador fideicomitente a los fines de la distribución del *corpus* resultante entre los designados. Nuevamente hicimos referencia a que el pago se efectuó involuntariamente por haberse así dispuesto contractualmente por el propio fideicomitente en el documento de constitución del fideicomiso. A la pág. 197, hicimos referencia a que: (i) se trataba de servicios prestados al caudal, (ii) el importe fue satisfecho con dinero procedente de la herencia, y (iii) el pago fue involuntario.

La dificultad con que nos enfrentamos en el asunto bajo consideración es la total ausencia de prueba sobre la cuestión medular de si se trata de servicios prestados, tanto por los albaceas como por el abogado, para beneficio del caudal. Más bien la inferencia lógica es que se trató de una tramitación sencilla y sin complicaciones—apenas transcurrieron cinco meses entre el deceso y la distribución—en que los activos del caudal eran bien conocidos. Correspondía a los reclamantes poner al tribunal en condiciones de determinar si las gestiones se hicieron para beneficio del caudal o en interés particular de los herederos voluntarios. No lo hicieron. Ni siquiera se ofreció prueba sobre la naturaleza de los bienes relictos lo que nos impide determinar si en efecto puede haber habido actos de administración, que no fueran de mera custodia y conservación.

Otros índices señalan que bajo la Ley Núm. 303, *supra,* la deducción de estos gastos—en que se incurre después de ocurrido el suceso que da margen a la tributación, la muerte del causante o testador—es más bien la excepción que la regla. No sólo la manida doctrina sobre la interpretación restrictiva de las deducciones contributivas, sino el mismo estatuto en su Sec. 14, 13 L.P.R.A. sec. 892, tiende a apuntar que tales sumas no son deducibles al disponer la tributabilidad de las mismas como si "fuesen una manda o un legado." (3) Por otro lado es significativo que al aprobarse la nueva legislación sobre contribución de caudales relictos y

(3) Esta disposición tiene su precedente en el Art. 371 del Código Político de 1902, E.R. pág. 494, que fue incorporado *ad verbatim* como el Art. 4 de la Ley Núm. 99 de 29 de agosto de 1925 (Leyes, pág. 791).

Su texto bajo le Ley Núm. 303 es el siguiente:

"Las obvenciones, retribuciones o salarios de cualquier administrador, albacea o fideicomiso sean fijados por el testador, o por el tribunal competente, o sean de un legado remanente, estarán sometidos a la contribución antedicha, de la misma manera que si dichas obvenciones, retribuciones o salarios, fuesen una manda o un legado; y se tomará en cuenta la edad de dicho administrador, albacea o fideicomiso, como si fuese un heredero, legatario o donatario del fallecido."

donaciones, Ley Núm. 167 de 30 de junio de 1968 (Leyes, pág. 556), se insertó una disposición expresa que reconoce *en forma limitada* la deducción de honorarios de abogados, contadores, agrimensores, partidores y de albaceazgo, como una baja del caudal. La Sec. 53(6), 13 L.P.R.A. sec. 5053([4]) reza:

"(6) *Honorarios.*—Los honorarios de abogados, contadores, tasadores, agrimensores, partidores y de albaceazgo, que en conjunto realmente se incurra hasta la fecha de radicación de la planilla final, cuyo máximo se determinará de acuerdo con la escala progresiva que se ofrece a continuación:

Si el caudal relicto bruto es:

Hasta $ 100,000.00 el 3%
De $100,000 a 500,000.00 el 2½% ó $3,000, el que sea mayor
De 500,000 a 1,000,000.00 el 2% ó $15,000, el que sea mayor
Sobre 1,000,000.00 el 1½% ó $20,000, el que sea mayor."

Obsérvese que bajo esta ley sólo hubiese podido reclamarse como deducción la suma de $3,000.

Consideraciones prácticas también abonan nuestra conclusión, ya que concebiblemente mediante la distribución de retribuciones a albaceas, administradores y abogados en sumas arbitrarias—en cuya fijación ninguna intervención tiene el Secretario de Hacienda—podría reducirse la responsabilidad contributiva, especialmente considerando la condición progresiva de la tasa de imposición.

*Por los fundamentos expuestos se revocará la sentencia dictada por el Tribunal Superior, Sala de Ponce, en 8 de agosto de 1968, y se desestimará la demanda.*

---

([4]) En la tributación federal se permite la deducción de gastos administrativos según permitido por las leyes de la jurisdicción bajo la cual se encuentra la administración del caudal. Sec. 53(a), 26 U.S.C. § 2053; Federal Tax Regulations, 1969, vol. 2, § 20.2053-3. Véanse, Mertens, *The Law of Federal Gift and Estate Taxation*, vol. 4, §§ 26.33 y 26.35; Beveridge, *Law of Federal Estate Taxation*, vol. 2, § 13.07; Rabkin y Johnson, *Federal Income, Gift and Estate Taxation*, vol. 4, § 53.02.