ANA LILLIAM CINTRÓN GARCÍA ET AL., demandantes y recurridos, *v.* HON. RAYMOND J. GONZÁLEZ, en su carácter de SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrente.

*Número:* R-72-131    *Resuelto:* 18 de septiembre de 1973

636

*J. F. Rodríguez Rivera, Procurador General Interino,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados del recurrente; *Raúl Matos, Raúl E. Matos, Leopoldo J. Cabassa Saurí,* abogados de los recurridos.

Ẹl Juez Asociado Señor Martínez Muñoz emitió la opinión del Tribunal.

Se plantea en este recurso el efecto que pueda tener en la determinación de la participación hereditaria tributable bajo la vieja Ley de Contribuciones Sobre Herencias y Donaciones (Ley Núm. 303 de 12 de abril de 1946, 13 L.P.R.A. secs. 881–905) las donaciones *inter vivos* que el causante haya hecho en vida al donatario. La controversia contributiva surge de los hechos que brevemente se reseñan a continuación.

En los años 1963 y 1964, por escritura otorgada ante el Notario Sergio León Lugo, doña Herminia García Mercado y su esposo, don Arturo Cintrón, donaron a su hija, doña Ana Lilliam Cintrón García, un solar de 251.546 metros cuadrados y casa, y solar de 339.35 metros cuadrados y dos casas de concreto tasadas en $8,430 y $16,371, respectivamente, lo que asciende a $24,801.00 el valor de lo recibido en concepto de donación de sus padres por Ana Lilliam Cintrón García. Se le impuso una contribución sobre donación de $200.10 y $1,105.65, respectivamente, que fue pagada al Departamento de Hacienda.

Doña Herminia García Mercado falleció intestada el 15 de abril de 1964. Tramitada la correspondiente declaratoria de herederos el 22 de mayo de 1964, el Tribunal Superior, Sala de Ponce, declaró como sus únicos herederos a sus hijos Ana Lilliam, Arturo Juan, Juan Herminio y Miguel Ángel, de apellidos Cintrón García, y a su cónyuge supérstite don Arturo Cintrón, en lo que concierne a la cuota viudal usufructuaria.

El 15 de junio de 1964, Arturo Juan Cintrón García tramitó la correspondiente notificación de defunción ante el Secretario de Hacienda. En el encasillado "D" de dicha planilla aparece Ana Lilliam Cintrón García como hija de la causante, correspondiéndole una cuarta parte de la herencia dejada por doña Herminia García Mercado.

El 8 de agosto de 1967 el Secretario de Hacienda le notificó a Arturo Cintrón García la liquidación preliminar sobre la valoración de los bienes y la contribución total sobre herencia. El valor de los bienes a distribuir ascendió a $23,505.91, así como la contribución total sobre herencia a $2,399.69. La cuota viudal usufructuaria fue calculada en $924.69 y la diferencia, $22,581.22, la distribuyó por partes iguales entre los cuatro herederos de la causante, correspondiéndole a Ana Lilliam Cintrón García $5,641.31. A esta cantidad el Secretario de Hacienda le acumuló las donaciones que ella había recibido en vida de su madre, o sea, $8,430 y $16,371, para un total de $30,561.58. Después de deducirle la exención personal de $5,000 que permite la ley, se determinó que la contribución suya era $3,561.58 a la cual se le restaron las contribuciones ya pagadas de $200.10 y $1,105.65 por concepto de las donaciones recibidas, imponiéndole a dicha heredera una contribución de $2,555.83, más el 2% de dicha contribución como penalidad por la radicación tardía de la planilla.

No conforme con la determinación del Secretario de Hacienda, la sucesión de doña Herminia García Mercado solicitó su reconsideración. Alegaba la sucesión que la distribución debió hacerse de acuerdo con el Código Civil de Puerto Rico y que, de acuerdo con dichas disposiciones, a Ana Lilliam Cintrón no le correspondía nada de la herencia ya que en este caso procedía la colación de las donaciones. Celebrada la vista administrativa, el Secretario de Hacienda sostuvo su determinación y así lo notificó a la sucesión el 5 de marzo de 1971.

El 31 de marzo de 1971 la representación legal de la sucesión de doña Herminia le notificó al Secretario de Hacienda que iniciarían acción judicial y acompañó un cheque por la cantidad de la contribución con la cual estaban conformes. Al día siguiente se radicó demanda de "Reliquidación de una Contribución de Herencia" contra el Secretario de Hacienda en el Tribunal Superior, Sala de Ponce. En dicha demanda se alega, por primera vez, que la citada Ana Lilliam Cintrón

García, con el consentimiento de su esposo, repudió la herencia de doña Herminia García Mercado, por lo cual sostiene no tener participación alguna en la misma. (¹)

La demanda fue declarada con lugar mediante sentencia eximiendo de toda contribución sobre herencia a la demandante Ana Lilliam Cintrón García en base de que ésta o había repudiado la herencia o no tenía derecho a participar en la misma porque las donaciones colacionables que recibió eran mayores que su posible participación hereditaria. En cuanto a los demás demandantes, Arturo Juan, Juan Herminio y Miguel Angel Cintrón García, dio como satisfecha la obligación del pago de contribuciones en la misma cantidad ya pagada al Secretario de Hacienda el 31 de marzo de 1971.

Acordamos revisar. Las donaciones y el fallecimiento de la causante en el caso de autos, ocurrieron en los años 1963 y 1964; por tanto, la ley aplicable al caso es la Ley Núm. 303 de 12 de abril de 1946, 13 L.P.R.A. secs. 881–905, conocida por el nombre de Ley de Contribuciones sobre Herencias y Donaciones. (²) Esta ley nos dice que el término "donación" incluye la donación puramente graciosa, la onerosa y la remuneratoria, según definidas en el Código Civil de Puerto Rico, pero también define como donación toda transferencia que se haga por herencia por testamento o abintestato. 13 L.P.R.A. sec. 881(a). En la Sec. 1(b) nos dice que el término "donatario" significa la persona que recibe una donación, según

---

(¹) El documento de repudiación de herencia consta de la Escritura Núm. 37 otorgada ante el Notario Antonio Fernández Rodríguez el día 29 de marzo de 1971, transcurridos veinticuatro días de la fecha de la determinación final del Secretario de Hacienda.

(²) Esta Ley fue sustituida por la Ley Núm. 167 de 30 de junio de 1968, Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico, 13 L.P.R.A. secs. 5001–5532, que entró en vigor el 1 de enero de 1969. Dispone la Ley Núm. 167 en su Sec. 530 (13 L.P.R.A. sec. 5530) que en los casos de causantes fallecidos o donaciones realizadas antes de la vigencia de la nueva ley, se continuarán aplicando las leyes anteriores que imponen contribución sobre herencias y donaciones.

ésta se define en la subdivisión (a), incluyendo herederos, legatarios y causahabientes. 13 L.P.R.A. sec. 881 (b)

¿Cómo se computa la contribución sobre herencia? La Sec. 2 de la Ley Núm. 303, 13 L.P.R.A. sec. 883, prescribe:

"Se impondrá y cobrará al donatario de cada donación tributable, y éste pagará, una contribución a los tipos que se expresan en la sec. 884 de este título. Para computar dicha contribución se seguirá el siguiente procedimiento:

(a) En la primera donación que recibe el donatario (1) se aplicarán los tipos que se expresan en la sec. 884 de este título al montante de dicha donación; (2) de la suma que resulte se deducirán los créditos contributivos que se disponen en la sec. 887 de este título; y la diferencia que resulte será la contribución que se cobrará y pagará de acuerdo con la secs. 881 a 905 de este título.

(b) En la segunda y subsiguientes donaciones recibidas por el donatario (1) se aplicarán los tipos que se expresan en la sec. 884 de este título al total de las donaciones acumuladas incluyendo la donación sobre la cual se va a determinar la contribución; (2) del montante que resulte se deducirá una cantidad igual a la contribución computada a los tipos que se expresan en la sec. 884 de este título sobre el total de las donaciones acumuladas, sin incluir en éstas la donación sobre la cual se va a determinar la contribución; (3) de la diferencia en ambas cifras se deducirán los créditos contributivos que se disponen en la sec. 887 de este título; y la diferencia que resulte será la contribución que se cobrará y pagará de acuerdo con las secs. 881 a 905 de este título."

En *Rivera Torres* v. *Srio. de Hacienda,* 91 D.P.R. 215, 217–218 (1964), nos expresamos así en relación con la Ley Núm. 303:

"Nuestro estatuto . . . constituye un plan de tributación integrado y funciona a base de las donaciones recibidas por una persona a partir de la aprobación de la Ley Núm. 303. No es un estatuto que toma cada donación como un evento tributable separado y aisladamente de otras donaciones. De ahí el que se incluyera el término 'donaciones acumuladas' definido como el *montante* de las donaciones tributables recibidas por determina-

do donatario desde la fecha de la vigencia de la ley, constituyendo una 'donación tributable' el importe de la donación menos el monto de las exenciones concedidas por la Sec. 4. De ahí las Secs. 2 y 3 contengan una imposición contributiva integrada en tal manera que gira en torno de la primera donación y de la segunda y siguientes donaciones, y se establece el mecanismo para determinar la contribución de un determinado acto tomándose en cuenta la acumulación de donaciones anteriores. También las disposiciones de la Sec. 5(b) relativas a la donación de bienes que ya han estado sujetos total o parcialmente a la contribución sobre herencia o sobre donación dentro de los 20 años anteriores a la fecha de la donación envuelta, a los efectos de la concesión de ciertos créditos."

Véanse también: *Maristany* v. *Srio de Hacienda*, 94 D.P.R. 291, 312 (1967); *Manautou* v. *Srio. de Hacienda*, 87 D.P.R. 185, 189 (1963); *Freeman* v. *Srio. de Hacienda*, 82 D.P.R. 307, 310–312 (1961).

■ La Ley Núm. 303 entremezcla entre sus disposiciones las transferencias por donaciones *inter vivos* con las transferencias por herencia. Usa el término "donación" para incluir ambos eventos y el término "donatario" para incluir tanto el que recibe una donación *inter vivos*, como el que recibe herencia.

Meléndez Carrucini[3] explica el funcionamiento del sistema integral que establece la Ley Núm. 303 y dice:

"Bajo la ley vieja, todas las donaciones inter vivos que el causante haya hecho en vida al donatario, se suman a la herencia que reciba dicho donatario al fallecimiento de aquél, para determinar la participación hereditaria tributable en el caudal de su causante. Naturalmente, la contribución pagada por el donatario sobre las donaciones recibidas en vida se acreditan a la contribución sobre herencia que resulta sobre el total acumulado de donaciones más herencia, pero dicho crédito como puede verse, nunca permite recobrar totalmente la contribución sobre donación pagada porque la acumulación somete el valor de las donaciones a tipos contributivos más altos que los pagados al

[3] Meléndez Carrucini, *Manual de Contribuciones sobre Caudales y Donaciones*, 1969, pág. 34.

hacerse la donación. Este procedimiento de acumulación es lo que se conoce por *'sistema integral'*, que tiene el efecto de convertir la contribución sobre donación en prácticamente un adelanto de la contribución de herencia."

■ El método que dispone la Ley Núm. 303 no es el de la contribución sobre el derecho a transferir la totalidad de la masa hereditaria, sino el de la tributación sobre el derecho o privilegio de recibir su participación líquida e individual cada heredero, legatario o beneficiario de la herencia. *Silva* v. *Srio. de Hacienda*, 86 D.P.R. 332, 341–343 (1962). El procedimiento utilizado por el Secretario de Hacienda en el caso de autos cumple con la Sec. 883 (13 L.P.R.A. sec. 883). Tal como lo establece la Ley Núm. 303 este sistema no impone una doble tributación y sí un sistema integral que impone una contribución progresiva sobre las donaciones acumuladas, proveyendo un crédito por las contribuciones ya pagadas por el donatario.

Alega la recurrida que la participación hereditaria tributable debe hacerse de acuerdo con las disposiciones del Código Civil de Puerto Rico referentes a la colación de bienes. Art. 989, 31 L.P.R.A. sec. 2841. De acuerdo con esta disposición a Ana Lilliam Cintrón no le correspondía nada en la herencia, según alega, porque las donaciones colacionables que recibió eran mayores que su posible participación hereditaria.

La Ley Núm. 303 requiere que en la Notificación de Defunción o Donación todo Administrador informe, tan exactamente como sea posible, el montante, valor, descripción y situación de los bienes del difunto; los nombres y grados de parentesco de los herederos, mandatarios y legatarios, y la parte proporcional y descripción de los bienes que a cada uno corresponda. 13 L.P.R.A. sec. 893.(⁴) En la planilla aparece Ana

(⁴) La instrucción Núm. 5 que aparece en la primera página de la planilla dice: "Las partes aplicables de la Notificación de Defunción o Donación deben ser cuidadosa y totalmente cumplimentadas. Es requisito de ley el que se consigne, tan exactamente como sea posible el valor, descrip-

Lilliam Cintrón García como hija de la causante correspondiéndole una cuarta parte de la herencia dejada por doña Herminia García Mercado. La planilla aparece jurada por el Administrador haciéndose constar que la declaración contiene una relación exacta y verdadera del monto, distribución y localización de los bienes objeto de esta herencia a la fecha de la muerte, así como los nombres de los herederos, fecha de nacimiento de los mismos y la parte proporcional que a cada uno de estos corresponde.

■ Lo provisto en el Código Civil sobre la colación de bienes se invoca, por primera vez, en la reconsideración de la notificación preliminar del Secretario de Hacienda. Estamos frente a una medida fiscal. La cuestión no es si Ana Lilliam Cintrón García podía o no colacionar. El que exista la obligación de colacionar no garantiza el que se exija, ni el que se realice la colación. Los interesados en una herencia pueden convenir en que la cantidad recibida por un hijo en concepto de legítima anticipada se considere como una deuda a favor del caudal común y no sea colacionada y descontada de su porción hereditaria. *Irizarry* v. *Registrador de San Germán*, 22 D.P.R. 94, 101 (1915).

■ Bonet Ramón dice que el fundamento de la colación es subjetivo, "ya que depende de la voluntad del causante de dispensar de ella, presumiéndose que cuando no lo ha hecho expresamente es porque desea se aplique igual trato a los legitimarios, a los que hizo en vida las donaciones con el carácter de anticipo de su cuota hereditaria. La voluntad no es, pues, absoluta, y la ley no impone en todo caso la igualdad de tratamiento, que puede ser excluída por el donante, y evitada por el donatario, repudiando la herencia." (5)

ción y localización de los bienes. . . .; los nombres y grado de parentesco de los herederos, legatarios o donatarios *y la parte proporcional del caudal que a cada uno de ellos corresponda.* (Énfasis suplido.)

(5) Bonet Ramón, *Compendio de Derecho Civil* (1965), pág. 851.

644

■ Ahora bien, si los interesados en una herencia pueden convenir no colacionar y no descontar lo recibido por un hijo en concepto de legítima adelantada, y considerarlo como una deuda a favor del caudal común; ¿no podrían los interesados en una herencia convenir en no colacionar lo donado a un hijo por su madre? Entre los herederos pueden llegar a cualquier acuerdo mientras todos estén conformes. Pero, para los efectos del fisco, tiene que informarse la participación de cada uno y cada heredero debe pagar la contribución que le corresponde. No es la existencia del derecho o de la obligación de colacionar razón por sí sola suficiente para considerar la colación como hecha a los fines de la imposición contributiva. Las contribuciones no pueden determinarse sobre la existencia del derecho a la colación, sino sobre la colación efectiva y real, si es que se ha colacionado. "[P]or tratarse la Ley de Contribución Sobre Herencias y Donaciones de una medida de carácter puramente fiscal no siempre coinciden los conceptos del Derecho Civil Común y el Derecho Tributario. Específicamente, el caudal neto sujeto a distribución entre los herederos conforme a los preceptos del derecho sucesorio no es necesariamente el que está sujeto a la imposición contributiva por la transferencia operada en virtud de la muerte del testador o causante." *Reus García* v. *Srio. de Hacienda*, 97 D.P.R. 220, 223 (1969). Ver *Rexach* v. *Srio. de Hacienda*, 96 D.P.R. 913 (1969); *Semanaz* v. *Srio. de Hacienda*, 76 D.P.R. 411, 416 (1954).

■ Los autos carecen de base para una determinación de que Ana Lilliam Cintrón García verificó la colación, efectiva y realmente, igualando a los demás. Art. 1001, 1002 del Código Civil, 31 L.P.R.A. secs. 2853–2854. (⁶) A los fines de la

(⁶) Art. 1001—"El donatario tomará de menos en la masa hereditaria tanto como ya hubiese recibido, percibiendo sus coherederos el equivalente, en cuanto sea posible, en bienes de la misma naturaleza, especie y calidad."

Art. 1002—"No pudiendo verificarse lo prescrito en la sección anterior, si los bienes donados fueren inmuebles, los coherederos tendrán derecho a ser igualados en metálico o valores mobiliarios al tipo de cotiza-

imposición contributiva el derecho referente a la colación de bienes, considerado aisladamente, en nada le ayuda a la contribuyente recurrida, sobre quien recaía la obligación de demostrar que efectivamente había colacionado las donaciones recibidas. De otra manera se podría evitar la responsabilidad mayor contributiva exigiendo del Secretario de Hacienda que imponga la contribución como si se hubiera colacionado. (7) La Ley no favorece donaciones ficticias que puedan tenerse como hechas con el fin o propósito de evitar el pago de una mayor contribución. *Cf. Serrallés Galiano* v. *Srio. de Hacienda,* 84 D.P.R. 11 (1961).

El otro fundamento de exención radica en la determinación de que la recurrida Ana Lilliam Cintrón García repudió la herencia. Ya hemos señalado que la escritura de repudiación de herencia fue otorgada por la contribuyente el 29 de marzo de 1971, tres días antes de radicar la acción judicial impugnando la determinación final del Secretario de Hacienda y veinticuatro días después de notificada la determinación final a la contribuyente.

La causante falleció el 15 de agosto de 1964. A la fecha del otorgamiento de la escritura de repudiación habían transcurrido más de seis años y medio. La alegación de Ana Lilliam Cintrón García de haber repudiado la herencia se hizo por primera vez en la demanda impugnando la contribución. Esta fue radicada el 1 de abril de 1971 y diligenciada seis días después en la persona del Secretario de Hacienda.

---

ción; y no habiendo dinero ni valores cotizables en la herencia, se venderán otros bienes en pública subasta en la cantidad necesaria.

Cuando los bienes donados fueren muebles, los coherederos sólo tendrán derecho a ser igualados en otros muebles de la herencia, por el justo precio, a su libre elección."

(7) De ser así, los demás herederos forzosos resultarían perjudicados al tener que pagar como si recibiesen una mayor participación de la herencia, y aun cuando el donatario les pagara la diferencia, éste estaría pagando las contribuciones computadas sobre tipos más bajos, obviando los propósitos de la ley.

Concurrimos con el recurrente que mucho tiempo antes del otorgamiento de la escritura de repudiación Ana Lilliam Cintrón García realizó una serie de actos ante el Secretario de Hacienda que revelan su intención de haber aceptado la herencia. La notificación de defunción fue tramitada el 15 de junio de 1964 por medio del Administrador quien la juramentó. En dicho escrito aparece Ana Lilliam Cintrón García como hija de la causante y heredera de ésta correspondiéndole una cuarta parte de la herencia. El 8 de agosto de 1967 el Secretario de Hacienda le notificó al Administrador la liquidación preliminar sobre la valoración de los bienes y la contribución total sobre herencia. Solicitada la reconsideración y vista administrativa, ésta tuvo lugar el 4 de diciembre de 1967. Se alegó entonces que a Ana Lilliam Cintrón no le correspondía nada de la herencia ya que en este caso procedía la colación de las donaciones.

En ningún momento negó Ana Lilliam Cintrón su condición de heredera ni alegó haber repudiado la herencia. Por el contrario, ella sostuvo ante el Secretario de Hacienda, conjuntamente con los demás herederos, el derecho y obligación de colacionar. Esta acción de su parte constituye una aceptación tácita de la herencia, conforme al Art. 953 del Código Civil, 31 L.P.R.A. sec. 2781 que dispone *inter alia*:

"La aceptación pura y simple puede ser expresa o tácita.

.    .    .    .    .    .    .    .    .

Tácita es la que se hace por actos que suponen necesariamente la voluntad de aceptar, o que no habría derecho a ejecutar sino con la cualidad de heredera.

.    .    .    .    .    .    .    .    .

Ana Lilliam Cintrón optó, un año y cuatro meses antes de otorgar la escritura de repudiación, solicitar y defender ante el Secretario de Hacienda la colación de los bienes a los fines de la verificación final de los cómputos contributivos, reclamación ésta que solo le corresponde a los herederos forzosos que previamente hayan aceptado la herencia. Art. 989, 31

L.P.R.A. sec. 2841. Guaroa Velázquez, *Teoría del Derecho Sucesorio Puertorriqueño*, Cap. IV, págs. 105 y ss., Ed. 1961. La aceptación de la herencia se presupone siempre como consecuencia de la sucesión. Una vez aceptada en forma expresa o tácita, por actos que suponen la voluntad de aceptar la misma, es irrevocable. Art. 951, 31 L.P.R.A. sec. 2779. La no aceptación es una excepción que favorece a los herederos para que se les exima del cumplimiento de las obligaciones que suceden al difunto. *Rodríguez* v. *Ubides Vda. de Font*, 58 D.P.R. 252 (1941). Si la voluntad de la contribuyente era repudiar la herencia, debió haberla acreditado dentro del trámite administrativo que se siguió para la fijación de los cómputos contributivos, y no después de concluido dicho trámite. No lo hizo. Prefirió invocar allí el derecho referente a la colación de los bienes, asumiendo tácitamente la posición de haber aceptado la herencia. La repudiación manifestada luego es ir contra sus propios pasos en un esfuerzo de última hora de aliviar el peso contributivo mayor. Ello es inaceptable.

En virtud de lo expuesto, *se revocará la sentencia dictada por el Tribunal Superior, Sala de Ponce, y se dictará otra en su lugar declarando sin lugar la demanda presentada.*

Los Jueces Asociados, Señores Martín, Díaz Cruz e Irizarry Yunqué, no intervinieron.